# Commonwealth of Pennsylvania *v.* New York, Pennsylvania and Ohio Railroad Company, Appellant.

*Taxation—Corporations—Tax on capital stock—Debt.*

A tax upon the capital stock of a corporation is a tax upon its property and assets.

Under the Act of June 8, 1891, P. L. 229, the question of the actual value in cash of the capital stock of a corporation is a question of fact which must be determined by considering the value of defendant's tangible property and assets of every kind, including its bonds, mortgages and moneys at interest, and its franchises and privileges; and the amount of the incumbrances on its property and franchises is also a relevant fact to be considered, but it is not to be specifically deducted from the valuation so ascertained and determined.

As the actual value of the stock of a corporation is a pure question of fact, an insolvent corporation has no standing to complain of discrimination in the methods of appraisement as between itself and solvent companies, so long as its stock is not assessed in excess of its actual value.

Argued June 1, 1897. Reargued Feb. 28, 1898. Appeal, No. 24, May T., 1897, by defendant, from judgment of C. P. Dauphin Co., Commonwealth Docket, 1896, No. 691, on appeal

from tax settlement.    Before STERRETT, C. J., GREEN, WIL-
LIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Af-
firmed.    MITCHELL, GREEN and WILLIAMS, JJ., dissent.

Appeal from tax settlement.

The facts appear by the opinion of SIMONTON, P. J., which
was as follows :

This is an appeal from a settlement made by the auditor gen-
eral and state treasurer against the corporation defendant June 30,
1896, for tax on capital stock for the tax year 1895.    It was
tried by the court without a jury, as provided by the act of
April 22, 1874, and on the testimony and documentary evidence
we find the following facts :

1. Defendant is a corporation chartered under the laws of
the states of New York, Pennsylvania and Ohio, owning a line
of railroad extending from Salamanca, New York, across the
northwestern part of the state of Pennsylvania to Dayton, Ohio,.
a distance of 388.04 miles.    Of this line 92.4 miles are within
the state of Pennsylvania and the remainder in either New York
or Ohio.    Defendant also owns a line of railroad 33.78 miles.
in length, known as the Franklin branch, extending from Buch-
anan to Oil City, all in Pennsylvania.    It also owns a branch
7.7 miles in length in Ohio ; making the total mileage owned
by it 429.59 miles.    It is also lessee of 168.09 miles of road,.
of which 34.54 miles are in Pennsylvania and the remainder in
Ohio.    It connects at Salamanca, its eastern terminus, with the
railroad of the New York, Lake Erie and Western Railroad
Company, and by a connection at Dayton, Ohio, its western
terminus, it forms by means of leases and trackage contracts
part of the through line of the last named road from the city
of New York to the cities of Cincinnati and Chicago.

2. Defendant's capital was in 1895, $44,999,350, divided into
899,987 shares of the par value of $50.00 each ; 200,000 shares,.
or $10,000,000, being preferred stock, and 699,987 shares, or
$34,999,350, common stock.    The cost of defendant's road and
equipment was $170,987,519.58.    No dividends were ever paid
on either the preferred or common stock.

3. In 1895 defendant's indebtedness amounted to the sum
of $129,853,080.72, as follows : Prior lien bonds, $8,000,000 ;

first mortgage bonds, $44,337,000 ; deferred warrants converted into first mortgage bonds, representing unpaid interest on first mortgage bonds, $27,640,345.75 ; second mortgage bonds, $14,500,000 ; third mortgage bonds, $30,000,000 ; car trust agreements, subject to which the company held its active rolling stock, $1,950,000, and a small unsecured balance. Defendant has not for many years earned or paid any interest on its second or third mortgage bonds, and no interest was paid in 1895 on its first mortgage bonds, though some was earned. The interest on the $8,000,000 prior lien bonds was paid. Nearly all defendant's indebtedness is due to citizens or corporations of other states and countries than Pennsylvania.

4. In April, 1883, it leased its line and road to the New York, Lake Erie and Western Railroad Company for ninety-nine years, the terms of the lease requiring the lessee to pay to defendant thirty-two per cent of the gross receipts derived from the operation of the road. The gross receipts in the tax year 1895 amounted to $6,332,317.52, and the proportion due to defendant was $2,062,000. In 1893 the lessee became insolvent and passed into the hands of receivers appointed by the circuit court of the southern district of New York, and by virtue of an arrangement not clearly explained in the evidence, and of a decree of that court, the receivers were ordered to pay to the defendant instead of the agreed rental, only the net earnings received from the operation of its road, not less, however, than $1,500,000. Defendant during the tax year 1895 actually received as rental only $1,411,573.96, and it had during that time receipts from other sources amounting to $52,029.49. During its fiscal year ending June 30, 1895, its gross income from all sources was $2,042,307.15, and during 1895 there were expended upon its road in betterments $2,931,686.31. From what source the amount thus expended was derived is not definitely shown by the evidence.

5. During the months of April, May and June of 1895, 4,200 shares of the preferred stock of the defendant were sold in the city of New York at prices ranging from $62\frac{1}{2}$ to $87\frac{1}{2}$ cents per share, the average price being 75 cents. There were no shares of common stock sold during the tax year 1895.

6. An order of sale of defendant's road was granted in January, 1896, at the suit of the holders of the bonds secured by the

first mortgage on its road and franchises, and in pursuance of
this order all of its property, leasehold and otherwise, includ-
ing its franchises, was on February 26, 1896, sold at public
auction at the court house in Akron, Ohio, for the sum of
$10,000,000, subject to the prior lien mortgage of $8,000,000;
and the proceeds of the sale were appropriated towards the pay-
ment of the first mortgage bonds, the holders of subsequent
liens receiving nothing.

7. On February 21, 1896, the secretary and treasurer of the
defendant company, after having taken the oath prescribed by
the act of June, 1891, made the report to the auditor general
required by said act, and appraised the capital stock of said
corporation as of no value whatever.   The auditor general and
state treasurer, being dissatisfied with the appraisement and
valuation so made and returned, valued and appraised the capi-
tal stock of defendant for the tax year 1895 at $34,480,577.70,
stating at length in their appraisement their reason for so do-
ing, and settled an account in accordance with said appraise-
ment, charging defendant with a tax at the rate of five mills,
amounting to $172,402.88, from which settlement defendant
appealed to this court, and on the trial the report and appraise-
ment made by defendant's officers, the appraisement and settle-
ment made by the auditor general and state treasurer, defendant's
specifications of objection to the settlement and other evidence,
oral and documentary, were offered and heard.

8. After a full consideration of all the relevant evidence in
the case, we find that the appraisement made by the defendant's
officers is not correct, and that the appraisement made by the
auditor general and state treasurer is excessive; and we further
find that the actual value in cash of defendant's capital stock,
representing its tangible property and assets and its franchises
between the 1st and 15th of November, 1895, was $15,000,000,
and that defendant is taxable for the tax year 1895 at the rate
of five mills on $\frac{126}{510} \frac{18}{20}$ of said $15,000,000, that being the pro-
portion of defendant's capital stock which represents the propor-
tion of its road, property, assets, franchises and privileges in
Pennsylvania calculated on the mileage basis.

### DISCUSSION.

The opinion of the court below in Commonwealth v. West-

ern Land and Improvement Co., 156 Pa. 455, contains a history of this tax and shows that it has always been assessed on the basis of the rate per cent of dividends when the dividends during the tax year equaled or exceeded six per cent; and, when no dividend was made, on an appraisement of the capital stock.    And when the dividend was less than six per cent, under some of the acts, the tax was assessed on the basis of the rate per cent of the dividend, and under others, on the assessed value of the capital stock.    That case decides that when the tax is measured by the rate per cent of the dividend that is the only test; and some of the cases there cited illustrate this very forcibly, and show that the value indicated by the rate per cent is sometimes very different from the actual value. Thus in Atlantic and Ohio Telegraph Co. v. Commonwealth, 66 Pa. 57, where the report of the officers of the corporation stated that a dividend of ten per cent had been made, it was held that the dividend reported furnished the measure of the tax, although the corporation proved that it had in reality been paid upon a part only of the stock.    And in Columbia Conduit Co. v. Commonwealth, 90 Pa. 307, where, after declaring dividends amounting to $200,000, a loss by fire occurred to which nearly one half of the amount divided was applied, instead of being paid to the stockholders, the whole dividend was nevertheless held to furnish the measure of the tax.    And in Matson's Ford Bridge Co. v. Commonwealth, 117 Pa. 265, where all the property of a corporation with a capital of the par value of $45,000 was converted into money and amounted to $75,000, the excess of $30,000 above the par value of the capital stock was held to be a dividend, and the company was assessed thereon with a tax of one half mill on each one per cent amounting to $1,500, which would be a three mill tax upon $500,000.    And in Commonwealth v. Fall Brook Coal Company, 156 Pa. 488, it was decided that a tax on the capital stock of the Fall Brook Railway Company was a tax on $3,500,000, which the Fall Brook Coal Company held invested in the shares of the railway company, and that to tax that amount of the capital stock of the coal company after the railway company had paid the tax on its capital stock would be double taxation.

It thus appears that under the acts taxing capital stock, as they stood prior and up to 1891, the amount of dividend de-

clared during the tax year was the only test of the amount of the tax, and that this had no necessary relation to the actual value of the capital stock of the corporation.

When the dividends did not amount to the rate which by the taxing acts was made the measure of the tax, the capital stock of the company was required to be appraised, and a tax at the rate of originally three mills, afterwards five, was assessed upon its appraised value. This appraisement, it is true, was formally of the capital stock, and not of the property of the corporation, and the data required to be furnished to the auditor general, by the terms of the acts, to enable him to judge of the correctness of the appraisement, related to the operations of the company during the year, the amount of its capital stock, and the value of its shares, more directly than to the quantity, quality and value of its assets and property. The inference sought to be drawn from this by the learned counsel for defendant is, that as the value of the shares would be affected by the amount of indebtedness and incumbrances upon the property of the corporation, the practical result was that the tax, so far as it was a tax upon the property of the company, was a tax only on the value of its property less the amount of its indebtedness and incumbrances; but it must be remembered that this basis of assessment was adopted in 1844, when the corporations to which it applied were mainly banks and other moneyed institutions which did not have incumbrances, and whose indebtedness was mainly for deposits, that were a source of profit to the corporations. The subjects of the tax are said in the Act of April 29, 1844, P. L. 486, to be "all banks, institutions and companies." An appraisement of the shares of such corporations at not less than the price at which they sold in the market would furnish a fairly accurate measure of the value of the assets and property of the company.

That by "institutions" in the act of 1844, the legislature intended moneyed corporations, is shown by the Act of April 16, 1845, P. L. 507, where the subjects of the tax on capital stock imposed by the act of 1844 are styled "banks and saving institutions." And in the Capital Stock Act of 1859, P. L. 529, the subjects of the tax are styled "banks, saving institutions and companies whatsoever." It was not until after the passage of the Act of February 23, 1866, P. L. 82, that banks ceased to be the principal corporations subject to the tax on capital stock.

By the Act of May 1, 1868, P. L. 108, the amount of the dividend declared by the corporation was made the measure of the tax on its capital stock in every case where any dividend was made, and it was only in cases where no dividend whatever was made that the officers of the corporation were required "to estimate and appraise the capital stock of such companies at its actual value in cash." This act contains no suggestion that the appraised value should be the value of the property and assets of the corporation less its indebtedness.

The Act of April 24, 1874, P. L. 68, which superseded the act of May 1, 1868, was practically identical with it on this subject, except that the officers of the corporation were required "to estimate and appraise the capital stock of such companies upon which no dividend had been made or declared, at its value, not less than the average price which said stock sold for during said year;" and that it also contained the proviso, "That if the auditor general or state treasurer, or either of them is not satisfied with the valuation so made and returned, they are hereby authorized and empowered to make a valuation thereof and to settle an account upon the valuation so made by them for the taxes, penalties and interest due the Commonwealth." This proviso contains at least an implication that even if the appraisement were not less than the average selling price, it might be too low, and no restriction was put upon the accounting officers in making the appraisement, nor did the act require them to deduct incumbrances.

The Act of June 7, 1879, P. L. 112, required the capital stock to be appraised when no dividend, or dividends less than six per cent, had been declared during the year, and contained a further limitation of minimum value in the appraisement, by requiring not only that it should be "not less than the average price which said stock sold for during said year," but also that it must be "not less than the average price or value as indicated or measured by the amount of dividends made or declared."

Under this act occurred the case of Hamilton Steeled Wheel Company v. Commonwealth, 12 W. N. C. 328, where $1,000,000, the whole capital of the corporation, had been invested in patent rights which would soon expire, and the officers of the company appraised the capital stock for the year 1879 at $110,000, and for the year 1880 at $100,000, on the theory that as the patent

had only two years to run and the whole value of the capital stock was invested in the patent, the stock was not worth more than that amount. The company, however, had made a dividend of four per cent, which in the judgment of the accounting officers indicated a value of at least $500,000, and they therefore assessed it at that amount. The court below decided that under the circumstances the value of the capital stock " must be as measured and indicated by the amount of dividends made and declared. However unjustly it might operate in particular cases, there can be no doubt of its meaning and the manner of valuing which it indicates and points out." On appeal to the Supreme Court this ruling was affirmed on the opinion of the learned judge of the court below, President Judge PEARSON. The next act in order was the act of 1889, which contained the same minimum limitation of value as the act of 1879.

We thus find that under all the acts taxing capital stock, the amount of the tax was either fixed by the rate per cent of the dividends—in which case that was the sole measure of the tax, regardless of the actual value of the property and assets of the corporation—or it was imposed on the appraised value of the stock, subject to the limitation, in the earlier acts, that the amount of the appraisement should not be less than the value indicated by the selling price of the stock—which would fairly indicate its value when the subjects of the tax were banks and institutions of that nature—and afterwards by the limitation that it should not be less than the value indicated by the amount of dividends or profit made. The nature of the test of value was in all cases an inquiry into the result of the activity of the corporations for the tax year and an inference of value from these results, rather than a direct estimate of the value of the tangible property and assets of the corporation.

There was, we think, ample reason for this. The value of the property and assets of a railroad corporation, for instance, cannot be ascertained by appraising its buildings, rails, bridges, cars, etc.; it is all these in operation, their use as a railroad, with the franchise or right to use them, and to charge fares and freight for so doing, that really constitute the property and assets of the corporation, and this is what is represented by its capital stock.

There has been, however, a large class of cases in which it

became necessary to have a more direct reference to the tangible property and assets of the corporation in making the appraisement. This was so in all cases where, by the terms of the taxing act, or because of the nature or situs of the property of the corporation, some of it was subject to taxation and some exempt. Thus, the capital stock of manufacturing corporations has been since 1885 exempt from taxation; but as this exemption was held to apply only to the proportion of the capital stock that represented property actually used in the business of manufacturing, while property not so used was held taxable, it became necessary to ascertain the value of the property in order to determine the proportion of the capital stock taxable and exempt. And when corporations, whose capital stock was subject to the tax, owned property which could not be taxed because of its nature, as, for instance, patent rights or United States bonds, or because it was located out of the state, it became necessary to ascertain the actual value of the property: Commonwealth v. Westinghouse Air Brake Co., 151 Pa. 276, Commonwealth v. Westinghouse Electric and Manufacturing Co., 151 Pa. 265, Commonwealth v. Juniata Coke Co., 157 Pa. 507, Commonwealth v. Pa. Coal Co., and Commonwealth v. Montgomery Lead and Zinc Mining Co., 5 Pa. C. C. R. 89 and 91, are cases of this kind; as is also Commonwealth v. Standard Oil Co., 101 Pa. 119.

Another like case is Commonwealth v. Pennsylvania Co., 145 Pa. 274, to which the learned attorney general has referred. This case was elaborately argued and considered in the court below, where it was conceded that if the corporation was taxable at all—which was denied—the tax was upon its property and assets; and that the value and nature, and situs, of these must be ascertained in order to determine the amount of the tax; and the data from which these could be ascertained was furnished by the defendant. The court below decided that the defendant was taxable on the amount of its capital stock represented by investments in real estate in Pennsylvania, personal property in Pennsylvania, stocks of foreign corporations, bonds of foreign corporations, and bonds of domestic corporations, and on the proportion of its capital stock represented by investments in equipment or rolling stock which was found to be within the state, by apportioning the whole amount invested

in equipment on the basis of its mileage within and without the state, as shown by the facts and exhibits. The case was appealed to the Supreme Court, and error was there assigned to these rulings, and to these only, and the case was argued on the questions thus raised, but none of these questions was decided by the Supreme Court. The only point decided was, as stated at the close of the opinion, 145 Pa. 283: "That after the lapse of a year from the time of payment of the taxes of a current year, without any request for the restatement of the account of the taxpayer, the account is closed, except as to clerical mistakes, and can only be reopened by an order of the board of revision."

This was an application of the provisions of section 16 of the act of March 30, 1811, relative to public accounts—which had been applied by the court below to the settlements for 1872 and 1873, because for those years the accounts were resettlements—to the settlements for the subsequent years, which were original settlements and not resettlements.

That this was done under a misapprehension of the facts is manifest. The learned justice who wrote the opinion evidently supposed that all the state taxes to which a corporation is subject for a given year are settled and included in one account, and did not know that it is and always has been the uniform practice of the accounting department to require reports and settle accounts separately for each kind of tax to which a corporation is subject and that a settlement for one kind of tax does not imply any consideration or determination of its liability or otherwise for tax of a different kind.

An "account" or "settlement" is a physical, tangible thing, a paper with figures and writing upon it, signed by the auditor general and state treasurer, indorsed, copied into a ledger and filed away in its appropriate place. Whether such a settlement has been made against a given corporation, for a tax of a given year, is therefore a question of fact, to be ascertained by looking in the proper place for the settlement. Such inspection showed at the time this case was tried, and would now show, that there had never been any settlement made against the Pennsylvania Company for the years from 1874 to 1887, inclusive, for tax on capital stock, and the court below found this as one of the facts in the case. The settlements then in ques-

tion for those years were therefore original settlements and not resettlements as was supposed; while those for 1872 and 1873 were resettlements and this is the reason why the court below held the latter invalid and those for the subsequent years valid.

It was not claimed by the counsel for defendant, who are experts in tax cases, that the settlements for the years subsequent to 1873 were resettlements, and therefore the ruling of the court below on this subject was not assigned for error, and hence the Supreme Court were not assisted by the argument of counsel in coming to the conclusion reached by them, which probably accounts for the misapprehension. The result is, that we are without a decision of the court of last resort on the questions decided in the court below, and discussed in the Supreme Court. The case is, however, valuable as it shows that it was conceded and understood, both by the counsel and the court, that the tax in question was a tax upon the property of the corporation, the value of which it was necessary to appraise, and that the only controversy,—if the corporation was taxable,—was as to the method of apportionment; and that it was not even suggested by the learned counsel, that the indebtedness of the corporation should be deducted in order to ascertain the value.

We have now reviewed all the acts taxing capital stock prior to the Act of June 8, 1891, P. L. 229, and referred to many of the decisions in which these acts are construed and applied, and we have nowhere found it to be enacted or decided that in estimating and appraising the value of the capital stock, any deduction is to be made because of the fact that the property of the corporation is incumbered. This question has, it is true, never been directly litigated and adjudicated, but the implication contained in the acts, from the fact that there is no provision on the subject, and that no claim has ever been made for a deduction on this account, is strong that such was not the intention of the legislature.

It remains to consider the effect of the act of 1891, under which the settlement appealed from in this case was made. The title to this act is, " An act to provide increased revenues for the purpose of relieving the burdens of local taxation . . . . and providing for greater uniformity of taxation by taxing all

the property of corporations, limited partnerships and joint stock associations having capital stock, at the rate of five mills on each dollar of its actual value."

We think we find here a distinct declaration that the purpose of this act is to impose a tax upon the property of the corporation to which it applies. Defendant's counsel contends that the antecedent of " its " in the concluding words of the title, " five mills on each dollar of ' its ' actual value," is " capital stock." But the plain reading of the sentence, required alike by its grammatical and logical construction, is that it declares an intention to tax " at its actual value in cash all the property " of certain corporations, limited partnerships and joint stock associations, to wit: those " having capital stock." This construction is not in conflict with the expressions used in preamble six, where it is evident that capital stock is used as a synonym for " bonds, mortgages and moneys at interest, and franchises and property of other kinds ; " and being so used in the preamble we think we are warranted in assuming that it is used in the same sense in the body of the act.

This act also made important changes in the method of assessing the tax. The rate per cent of dividend is no longer the measure of the amount of tax, but in all cases the capital stock is to be estimated and appraised by the officers of the corporation " at its actual value in cash, not less however than the average price which said stock sold for during said year, and not less than the price or value indicated or measured by net earnings or by the amount of profit made and either declared in dividends or carried into surplus or sinking fund." And the act further provides " that if the auditor general and state treasurer or either of them, is not satisfied with the appraisement and valuation so made and returned, they are hereby authorized and empowered to make a valuation thereof, based upon the facts contained in the report herein required, or upon any information within their possession or that shall come into their possession, and to settle an account on the valuation so made by them for the taxes, penalties and interest due the commonwealth thereon." And while it is the " capital stock " that is to be appraised, we have just seen that the title of the act declares that the property is to be taxed, and preamble six defines what is meant by " capital stock " when it declares that

the tax is to be imposed on "their whole capital stock, including as well their bonds, mortgages and moneys at interest, as their franchises and property of other kinds."

In settling accounts against various corporations for the first year after this act came into force the auditor general construed the proviso, that the actual value in cash was to be "not less than the price or value indicated or measured by net earnings or by the amount of profit made and either declared in dividends or carried into surplus or sinking fund," to prescribe a hard and fast rule that the capital stock must be appraised at not less than a principal sum, six per cent of which would equal the net earnings of the corporation for the tax year; and he settled accounts on that basis against a number of corporations, from which settlements they appealed to this court, where, on the trial of the cases, it was decided that this construction of the act was erroneous, that the net earnings constituted only one fact to be considered in determining the actual value of the capital stock, and that the amount and rate per cent of dividends made and the amount accrued to surplus and sinking fund during the tax year do not furnish an absolute indication or measure of the actual value in cash of the capital stock of a corporation, but are to be considered with all other relevant facts in determining what is its actual value.   That the prominent idea or thought of the whole act was to base taxation on the actual cash value, and that this should be determined from facts and not theories in all respects except that this value should in no case be less than the average price at which the stock sold during the year : Commonwealth v. Edgerton Coal Co., 164 Pa. 284. And in Commonwealth v. Haney Transfer Co., 1 Dau. Co. Rep. 184, decided by this Court, it was said, in the opinion by Judge McPherson, that the question of actual value in cash is a question of fact which must be determined by considering the value of defendant's tangible property, the amount of its business, the rate of dividend declared, and the extent and value of its good-will and franchises and privileges, as indicated by the evidence bearing upon those subjects at that particular time.

In Commonwealth v. Delaware, Susquehanna & Schuylkill Railroad Co., 165 Pa. 44, it was contended by the defendant that the franchises of a corporation were not to be included and appraised in estimating the value of its capital stock.   But we

decided that the franchise of the corporation was an element to be considered in ascertaining the value of capital stock, and it was said in the opinion of the Supreme Court affirming this decision, page 54: "In ascertaining the actual value of the capital stock, was it proper to take into consideration as affecting that value, the franchises of the company?  We think this question is affirmatively answered by the act of June 8, 1891, under which the valuation was made.  The capital stock represents the franchises as well as other property of the company. In the sixth preamble of the act there appears a plain legislative purpose to include the franchises in fixing the value of the stock, and this is in harmony with the title and the provisions in respect to the taxation of it."

The able counsel for defendant lays great stress on the fact that in the taxing acts and in the decisions of the courts construing them, it is the capital stock which is said to be taxed. But a careful reading of the acts and the decisions will show that the words "capital stock" are used as a convenient term to connote property, tangible and intangible, of the corporation. This is implied when it is said that a tax on the capital stock is a tax on the property and assets of the company; and when it is enacted that the tax shall be "at a fixed rate of five mills upon each dollar of the actual value of their whole capital stock, including as well their bonds, mortgages and moneys at interest, as their franchises and property of other kinds;" and more definitely still when it is declared in the act of 1891, "that for the purpose of this act interests in limited partnerships or joint stock associations shall be deemed to be capital stock and taxable accordingly."

That is to say: As a matter of fact, a limited partnership has no capital stock in the common acceptation of the term, but every partner has a definite proportional interest in the assets of the company and for the purpose of taxation under this act this interest "shall be deemed to be capital stock and be taxable accordingly."  Clearly then, when, nominally, the capital stock is taxed it is in reality the property and assets of the company that are taxed; and the only way in which the value of the capital stock can be ascertained is by ascertaining the value of the property and assets.  This illustrates the truth of the remark made by Mr. Justice PAXSON already quoted, that

" the capital stock is nothing; a myth; a mere name, excepting in so far as it is represented by investments made with the money paid into the treasury of the corporation on account of such capital stock." In a limited partnership it is literally nothing but a name apart from the assets, and in a corporation proper it is really nothing more, although we are accustomed to conceive of it as a separate entity.

Counsel also argues that the form of the report required to be made by the act of 1891 does not call for a statement of the amount and value of the property and assets of the corporation and therefore that it is not the property that is to be appraised. But, as we have seen, the value of the property must be ascertained whenever the tax is to be apportioned or a limited partnership is to be taxed; and while it is true that the form of the report does not call for such definite information as to the actual value of the property and assets of the corporation as it might, the reason probably is that in the main it was copied from the prior acts without careful attention to the change.

The conclusion that the value of incumbrances should not be deducted would seem to be greatly strengthened when the matter is examined in the light of the doctrines declared in Commonwealth v. Fall Brook Coal Co., 156 Pa. 488. It is there decided that the capital stock of the corporation, and the shares into which the capital is divided are, at least for the purpose of taxation, identical, and that the shareholders are the real owners of the property and assets, which both the capital stock and the shares represent, and that they are the persons who are taxed when a tax is imposed upon either the capital stock or the shares. A corporation is, on page 494, said to be, " An artificial person created by law for the purpose of becoming the business representative, agent or trustee of so many persons as may join to furnish the money with which the business to be done by the corporation may be carried on. . . . The money furnished by those whose representative it is to be, is its capital stock. The amount that each person contributes to this fund is his share in the venture, and is called his share or shares in the stock. The legal title to the whole sum so contributed is in the corporation, and so the legal title to all the property, real or personal, in which it may be invested. The equitable title, that is, the right to the profits from the business

done, and to a return of the capital when the corporation is dissolved, is in the stockholders. . . . As in the ordinary case of trustees and cestui que trust, the real owners are the beneficiaries."

The opinion in this case also states, that the principle upon which it is proper to tax land without regard to the incumbrances upon it is, that there is no community of interest between the owner of the land and the owner of the money borrowed and invested in the land, and that to tax both is not double taxation; that " in that case there are two distinct subjects of taxation, each of which is made taxable by an express provision of the law. The farm is taxable as land, against whoever may be the owner, without regard to the incumbrances upon it. The sum secured by the mortgage is taxable as money at interest, regardless of the use the borrower may make of it. If the owner of the land is compelled to incumber it, it may be his misfortune, but the man who lends money to him has no connection with him in title. There is in such case no double taxation." The land is taxed once to its owner. The money at interest is taxed once to its owner. They are distinctly different taxpayers and pay taxes upon distinctly different subjects of taxation.

We have then these principles : A tax on the capital stock of a corporation is a tax on its property and assets. The corporation is simply a trustee for its stockholders, and they are the real owners of the property, or, as expressed by the learned justice, it is " the ordinary case of trustee and cestui que trust." The beneficiaries are the real owners. And whether the property is taxed in the name of the corporation or in the name of the shareholders, the ultimate burden falls on the same persons. The fact that the tax is called a tax on capital stock is therefore not of the essence of the matter. Whatever called, it is a tax on the property and assets of the shareholders for whom the corporation is simply trustee. Neither is it vital that it is taxed in the name of the trustee. The shareholders are the real owners of the property taxed, and the tax is therefore a tax on their property. But when the property of individuals is taxed, no reduction is made because the property is incumbered. It is therefore not easy to see why there should be any specific reduction made for individuals simply because their trustee is a

corporation. As was said by Mr. Justice MILLER in State Railroad Tax Cases, 92 U. S. at page 605: " Individuals do not escape taxation on their real and personal property because they are insolvent. . . . No state has ventured to establish the principle of permitting its visible tangible property to escape taxation relying solely on a tax imposed on the individual on the basis of his estimated wealth in excess of his debts." The consequence of establishing such a principle in Pennsylvania would be so serious that we cannot believe the legislature has ventured so to do. There are, as is well known, many railroad corporations in the state which, like the one in question in this case, built at an extravagant cost, met chiefly by borrowed money, are now insolvent, and whose net earnings are not sufficient to pay the interest on ·their sometimes enormous funded debt, yet have valuable franchises which have been granted by the state, as well as tangible property which for the uses to which it is applied is worth in many cases millions of dollars. All these under the construction of the act of 1891 contended for on behalf of defendant would entirely escape taxation by the state and are not subject to local taxation, while the property of individuals who have no franchise from the state is taxed without regard to their insolvency. And the injustice and impolicy of such a construction is presented in a yet stronger light when we remember that in many cases—and notably in the one now before us—nearly all the funded debt secured by the incumbrances on the insolvent corporation's property is held by residents of other states or foreign countries, so that if it is not taxable against the insolvent corporation, neither can it be reached, in theory even, by taxing the evidences of indebtedness. The result would be that property within the borders of the state worth many millions of dollars would be entirely exempted from taxation.

## CONCLUSIONS OF LAW.

1. A tax on the capital stock of a corporation is a tax on its property and assets including its franchises. The question of the actual value in cash of the capital stock is a question of fact which must be determined by considering the value of defendant's tangible property and assets of every kind, including its bonds, mortgages and money at interest, and its franchises

and privileges; and the amount of the incumbrances on its property and franchises is also a relevant fact to be considered, but it is not to be specifically deducted from the valuation so ascertained and determined.

2. The commonwealth is entitled to recover from defendant in this case a tax at the rate of five mills on the dollar on the actual value in cash of $\frac{126}{510} : \frac{18}{40}$ parts of the capital stock of defendant with interest at the rate of twelve (12) per cent from September 30, 1896, and attorney general's commission at the rate of five (5) per cent, amounting to $20,630.33.

3. Judgment is therefore directed to be entered in favor of the commonwealth and against the defendant for $20,630.33.

*Errors assigned* were, inter alia, finding of fact eighth, and conclusions of law one and two, quoting them, and the judgment of the court.

*M. E. Olmsted,* for appellant.—The tax imposed by the acts of 1889, 1891 and 1893, as well as previous acts, is a tax upon the shareholder of corporations, and is collectible under section 5 of the act of May 1, 1868, from the shareholders: Catawissa R. R. Co.'s Appeal, 78 Pa. 59; Com. v. Western Land & Imp. Co., 156 Pa. 455; Com. v. Phila. & Reading R. R. Co., 145 Pa. 74; Penna. R. Co. v. Com., 94 Pa. 474; Com. v. Lehigh Valley R. R. Co., 37 Leg. Int. 407.

Although the tax on capital stock is in the nature of a property tax, nevertheless the capital stock of a company and its property and assets are not identical, and under existing laws the latter are taxed only so far as they are reached by a tax of five mills upon the actual cash value of the capital stock.

The reasons why capital stock and corporate property, assets and franchises are not identical are found first, in the character of the interest of the stockholder, and second, in the fact that the value of the property, assets and franchises is equivalent to the value of the capital stock plus the value of the corporate indebtedness: 1 Thompson on Corp. sec. 1071.

Under earlier laws dividends were, in some instances, made arbitrary measures of the value of the capital stock. The legislature has never imposed a tax upon a valuation of property, assets and franchises: Phœnix Iron Co. v. Com., 59 Pa. 104;

Com. v. Ry. Co., 74 Pa. 89; Com. v. Brush Elec. Light Co., 145 Pa. 147.

Banks did not constitute an unusual percentage of the corporations taxed under the acts of 1844 and 1859. Their indebtedness is always deducted in determining the value of their capital stock or shares for taxation.

Cases in which the value of the property was ascertained and taxed charged only on that proportion of the value of the capital stock which the taxable property bore to the entire property and assets of the corporation.

The decision of the court in the Riser cases sustains the contention of the appellant, and not that of the commonwealth.

The Lackawanna case and the proviso relating to manufacturing corporations show that the tax is upon a valuation of the capital stock or shares, and not of the property, assets and franchises of the corporation: Com. v. Lackawanna Iron & Coal Co., 129 Pa. 346.

A tax upon the property of corporations, as property, would be unconstitutional: Com. v. Mill Creek Coal Co., 157 Pa. 524.

The taxation of defendant for 1895 upon a basis different from that adopted in the taxation of railroad and other corporations of the state for the same year, violates the act of 1865, and important constitutional provisions: Bangor's App., 109 Pa. 79; Com. v. Edgerton Coal Co., 164 Pa. 284; Bank of Columbus v. Hines, 3 Ohio, 1; Woodbridge v. Detroit, 8 Mich. 301; Dundee Mortgage, Trust Invest. Co. v. Charlton, 32 Fed. Rep. 192.

*Henry C. McCormick,* attorney general, with him *John P. Elkin,* deputy attorney general, for appellee.—The value of the capital stock of a corporation for purposes of taxation is a question of fact to be determined by the accounting officers of the commonwealth or by the courts.

The capital stock of a corporation may have different values, and the value for purposes of taxation must be fixed by taking into consideration the value of the property and assets, including the franchises and the material results of their exercises, as indicated by the earnings and by such other relevant facts as may be presented to the accounting officers of the common-

wealth or to the courts: Adams Express Co. v. Ohio, 165 U. S. 194; Com. v. Edgerton Coal Co., 164 Pa. 299; Fox's Appeal, 112 Pa. 337; Com. v. Del., Susquehanna, etc., R. R., 165 Pa. 54; Com. v. Del., etc., R. R., 14 Pa. C. C. R. 440; Pacific Hotel Co. v. Lieb, 83 Ill. 602; Ohio & Mississippi R. R. v. Weber, 96 Ill. 443; Hannibal, etc., R. R. v. Shacklett, 30 Mo. 550; Town of New Haven v. Bank of New Haven, 31 Conn. 106; State Railroad Tax Cases, 92 U. S. 605.

The claim that the indebtedness of a corporation should be permitted to obliterate the capital stock for purposes of taxation is without legislative authority or legal warrant.

The value of the capital stock of a corporation for the purpose of taxation should be measured by the value of its property and franchises, earnings, dividends, surplus, etc., and its indebtedness should not be specifically deducted: Com. v. Penna. Co., 145 Pa. 274; Com. v. R. R., 165 Pa. 54.

OPINION BY MR. JUSTICE DEAN, October 17, 1898:

All the material facts of this case are stated in the opinion of the court below. The finding of a fact determines the amount of the judgment; the accounting officers of the commonwealth and the court adopt a like construction of the statute, but differing in their views of the evidence, differ in results. The officers of the defendant corporation, putting a wholly different construction on the statute, largely differ from both as to the fact. The defendant appraises its capital stock as of no value whatever; the commonwealth appraises it at $34,480,577.70, the court below appraises it at less than half that amount. The main dispute between the commonwealth and defendant is as to the construction of the act of 1891. It may be conceded at once, that the legislative intent to levy the higher amount must be express or result from necessary implication, for if in a tax law the intent be doubtful it does not exist. The title of the act declares the purpose to be to tax "all the property of corporations, limited partnerships and joint stock associations having capital stock, at the rate of five mills on each dollar of its actual value." Could legislative language be plainer? All the property of corporations is to be taxed at the rate of five mills on each dollar of its actual value. The words "having capital stock" are used to distinguish such corporations from beneficial,

religious and other corporations having membership, but not capital stock representing the respective interests of members in the corporate property. Then, preamble six of the act further declares it to be the purpose to tax "All corporations, limited partnerships and joint stock associations having capital stock, at a fixed rate of five mills on each dollar of the actual value of their whole capital stock, including as well their bonds, mortgages and moneys at interest as their franchises and property of other kinds."

In Commonwealth v. Standard Oil Co., 101 Pa. 119, speaking by PAXSON, J., this Court held: "It has been repeatedly decided and is settled law that a tax upon the capital stock of a company is a tax upon its property and assets." Then in Fox's Appeal, 112 Pa. 354, it is said: "The capital stock is nothing; a myth, a mere name, excepting in so far as it is represented by investments made with the money paid into the treasury of the corporation on account of such capital stock. Hence it is that the courts have long since declared that a tax upon the capital stock of a corporation is a tax upon the assets and property of such corporation." In Commonwealth v. Delaware, Susquehanna & Schuylkill R. R. Co., 165 Pa. 44, opinion by McCollum, J., we said: "In ascertaining the actual value of the capital stock, was it proper to take into consideration, affecting that value, the franchise of the company? We think this question is affirmatively answered by the act of June 8, 1891, under which the valuation was made. The capital stock represents the franchises as well as other property of the company. In the sixth preamble of the act there appears a plain legislative purpose to include the franchises in fixing the value of the stock, and this is in harmony with the title and the provisions in respect to the taxation of it." There are other cases to the same effect. The statute having thus, in express terms, declared the subject of taxation to be all the property of corporations having capital stock, and the settled interpretation by this Court of a tax on capital stock of a corporation being, that it is a tax upon all the property of the corporation, it is clear that the learned judge of the court below committed no error in the first sentence of his conclusion of law, thus: "A tax on the capital stock of a corporation is a tax on its property and assets, including its franchises."

The main contention, however, is over the last part of the conclusions, as follows: " The question of the actual value in cash of the capital stock is a question of fact which must be determined by considering the value of defendant's tangible property and assets of every kind, including its bonds, mortgages and moneys at interest, and its franchises and privileges, and the amount of the incumbrances on its property and franchises is also a relevant fact to be considered, but it is not to be specifically deducted from the valuation so ascertained and determined." The contention of appellant's counsel, in substance is, that to ascertain the actual value, there should be deducted the amount of the corporation indebtedness from the aggregate fairly appraised value of the corporate property; the remainder would then represent the actual value of the capital stock. This would, in many cases, hide the tangible property and turn the commonwealth over to the assessment and collection of its revenues from nothing; in the face, too, of what we have repeatedly decided, that a tax upon the capital stock of a company is a tax upon its property and assets. The legislature might have so worded the statute that such result as that contended for would follow; namely, that solvent corporations should pay taxes and insolvent ones not; but, with our decisions in 1882 and 1886, and the declared law long preceding them, that capital stock in taxing statutes meant the property and assets of the corporation before them, they declared, in the act of 1891, precisely to the contrary. In fact, from the wording of preamble six of the act of 1891, we do not doubt, that at least the framer of the act was familiar with the opinion of this court in Com. v. Oil Co., supra.

In supporting their argument on each side, counsel have given undue significance to the indebtedness of the corporation; strictly speaking, in view of the purpose of this statute, the debt is almost as much of a myth as the certificate of capital stock. The declared purpose is to tax the capital stock by ascertaining its value in view of the tangible assets of corporations, what was owing to them, the value of their franchises and the rights and privileges they possessed under their grants. The commonwealth no more sought by the act of 1891 to ascertain and tax the net assets of these artificial beings, than, by the usual tax laws, she seeks to tax the net assets of natural ones;

in the latter case she rarely inquires as to what the taxpayer owes; she does ask what he is possessed of; it is only when the attempt is made to tax his creditor that, incidentally, what is owing by the debtor becomes of interest to the taxing power. We have no hesitation in holding that it would be manifest error to adopt the amount of the debt as a part of the value of the corporate property; and it would be just as erroneous to hold that it should be deducted from the aggregate value of the property, and thereby withdraw tangible property to that extent from taxation; in either case it would be dragging in a fact of but slight consequence, and making it the prominent and controlling one in the issue, in the face of the declared purpose of the statute to tax the actual value of the capital stock, as indicated by the franchises and property. In the case of Commonwealth v. Standard Oil Co., supra, PAXSON, J., in referring to the fact that the certificates of stock were in possession of the owner in Ohio, where the corporation was domiciled, says: "It follows, necessarily, that shares of stock in a Pennsylvania corporation, held by a corporation or individual domiciled in another state, cannot be taxed here. One sufficient reason is that there is nothing here to tax. The capital stock, that is, the property and assets, are here and are taxed." In other words, the shares themselves, which represent the owner's interest, less debts, have so little to do with the subject of taxation, the capital stock, that it is immaterial where they are held or who holds them; the property and assets, the capital stock, being in this state, that alone is within reach of the taxing power. Now, what change is worked in this tangible property by subjecting it to a debt of the owner? In the case cited, the certificates and owner were both in a foreign jurisdiction, yet the property and franchise being within the jurisdiction, the authority of the commonwealth to tax the capital stock, on ascertaining its value from what was within the jurisdiction, was upheld. If he cannot withdraw his tangible property from taxation by taking his title to it, and person, outside state boundaries, how can he do so by voluntarily pledging it for a debt? That the owner subjects it to a debt in no way changes the relation of the commonwealth to it as a subject of taxation. It constitutes precisely the same capital stock as before; his relation to his own property has been somewhat

changed, for by the mortgage debt he has admitted others to a share of the income, and has given them a lien for their debt; his title, however, remains just the same, as if the owner of the legal title to land had placed a mortgage upon it. All the indications of ownership, the possession of the deed and dominion over the property, continue as if no debt had been created. As is said by our Brother WILLIAMS, in Commonwealth v. Fall Brook Coal Co., 156 Pa. 488, speaking of the power of the commonwealth to tax the land as well as the mortgage upon it : " In that case, there are two distinct subjects of taxation, each of which is made taxable by an express provision of the law. The farm is taxable as land, against whoever may be the owner, without regard to the incumbrances upon it. . . . The land is taxed once to the owner. The money is taxed once to its owner. They are distinctly different taxpayers, and pay taxes upon distinctly different subjects of taxation." The debt, as an item of evidence, may have bearing in fixing the value of the franchise, but from the nature of the property and the character of the debt, its affirmative weight in establishing value is insignificant; for of all forms of debt, as an indication of actual value of the thing pledged, the ordinary railroad mortgage is the most unreliable, and especially is this the case when the mortgage is executed to carry out a reorganization plan of security holders in a bankrupt road. Without adverting further to the history of this road, it is sufficient to say that its mortgage debt was always far in excess of any possible value of the property. We do not know just what prominence was given by the learned judge of the court below to the amount of indebtedness in reducing the actual value of the capital stock. He says, in the conclusion of law already quoted, that the question of actual value in cash of the capital stock is one of fact, to be determined by considering the value of defendant's tangible property, etc. " And the amount of incumbrances on its property and franchises is also a relevant fact to be considered, but it is not to be specifically deducted from the valuation so ascertained and determined." That he gave no weight whatever to it, even as affirmative evidence tending to establish the value of the stock, as claimed by the commonwealth, is clear ; that he treated it as a relevant fact favoring defendant, and tending to reduce the actual value, although not to be specifically deducted, is

also clear. And in this, he was correct. That a large debt, one largely out of proportion to the value of the property, secured by mortgage, with interest payable semiannually, constituting what is called a fixed charge, seriously depreciates the actual value of the property, cannot be questioned. Default in any payment of interest puts the property in peril of seizure and sale to satisfy, not only the overdue interest, but the whole debt. A property heavily incumbered, as is this one, is liable to pass into the hands of the mortgage creditors at any time. But counsel for defendant planted himself on a demand for an absolute deduction of the whole amount from the appraised value, and made no request for a specific finding of fact in this particular. It was not, therefore, incumbent on the court to specify in the finding exactly what weight was given a particular fact; and we assume that it had all the effect it was entitled to.

The argument that different methods were adopted by the commonwealth's officers in ascertaining the actual value of the capital stock of corporations and, therefore, there has been want of uniformity and a discrimination, is not well founded. As the learned judge of the court below shows, prior to the act of 1891, the basis of taxation value, by the taxing acts, was the net earnings, but the latter act declares that the capital stock shall be appraised "at its actual value in cash, not less, however, than the average price which said stock sold for during said year, and not less than the price or value indicated or measured by net earnings, or by the amount of profit made, and either declared in dividends or carried into surplus or sinking fund." A minimum appraisement is here fixed for solvent corporations; in most cases, doubtless, the corporation officers and the commonwealth, in estimating the actual value of a solvent, well managed road, would adopt it, and properly, too, as a fair basis in estimating the actual value of the capital stock. But the act of 1891 was intended to reach also the bankrupt road, which may have the same mileage, the same traffic, and the same privileges as the solvent one. The state conferred upon it the right of eminent domain for location and extension of branches or feeders, as well as for necessary improvements; being constructed, it now has the right, under the protection of the laws, to operate it in carrying freight and passengers.

As the same rule for a fair estimate of the actual value of the capital stock cannot be adopted as in case of the solvent roads, and the commonwealth's officers, being dissatisfied with the corporate officer's appraisement, they proceed under the authority expressly given to make an appraisement, upon the facts in the report and other information within their possession. Upon appeal, the court differs from them in their inferences, and reduces largely the amount subject to tax. On the number of miles of road in Pennsylvania, about 127 out of a total of 430, with a capital stock of the actual value as a whole of $15,000,000, the court fixes the actual value of the capital stock of the 127 miles in this state, at only a little over $3,500,000. The method of determining the proportion of stock taxable in Pennsylvania has been repeatedly decided to be the correct one. The figures, certainly, do not indicate an excessive valuation of the capital stock of 127 miles of railroad. As between the defendant and solvent roads of the same physical character, there is no discrimination as concerns results in favor of the solvent ones, for the latter are rated as high as $40.00 to $52.00 per share, while this one is less than one third that amount. The actual value being a pure question of fact, appellant has no standing to complain of discrimination in methods, so long as its stock is not assessed in excess of that value. It may be that the Reading and some other corporations are taxed on less than the actual value of their capital stock; if so, the commonwealth is not here appealing, and consequently it is not our business to inquire into the matter.

We can only say that, after a most careful examination of the whole case, we find neither error of fact nor law in the judgment of the court below, and it is therefore affirmed.

MR. JUSTICE MITCHELL, dissenting:

I dissent in this and the kindred cases, known as the capital stock cases, because I am of opinion that the decision is founded on a fundamental error in confusing a tax on the property of the corporation with the tax on the property of the individual shareholder therein, which is what the statute imposes. The subject-matter of taxation under the act of June 8, 1891, is capital stock, eo nomine, independently, and without reference to the property which it represents. It is to be taxed at its

" actual value in cash, not less however than the average price which said stock sold for during said year," etc. The officers of the corporation concerned are required to make sworn returns under seventeen specific heads, all of which tend to show the value of the stock as such, and not a single one of which refers directly or indirectly to the value of the property which such stock represents. The value of the capital stock in the hands of the shareholders is the value of their resulting interest in the property of the corporation, subject to its debts and incumbrances, in view of the uses to which it may be put under its corporate franchises, etc., and the value of such resulting interest is the true subject of tax under the statute. As construed by this decision the tax is put on the value of the property of the corporation, without regard to the value of the capital stock in the hands of the shareholders. This is a total change in the subject of taxation without any warrant in the statute, and against its plain language and intent.

GREEN and WILLIAMS, JJ., join in this dissent.