## Koch's Estate.

*Taxation — Inheritance tax mistakenly paid — Reimbursement—Acts of March 30, 1811, 5 Sm. Laws, 228, April 8, 1869, P. L. 19, June 12, 1878, P. L. 206, June 9, 1911, P. L. 738, June 20, 1919, P. L. 521, and June 7, 1923, P. L. 498.*

1. Prior to the passage of the Act of June 7, 1923, P. L. 498, a refund of inheritance taxes mistakenly paid could not, under any act of assembly, be granted upon application made more than two years after date of payment of the tax, except in those special cases provided for in section 40 of the Act of June 20, 1919, P. L. 521.

2. Where an inheritance tax has been paid on real estate mistakenly included in the estate of a decedent, and no demand for reimbursement has been made until over three years after discovery of the mistake, no reimbursement can be allowed under the Act of June 7, 1923, P. L. 498.

3. The power of the Board of Finance and Revenue, under paragraph (b) of the Act of 1923, to, "revise any settlement made . . . by the Auditor General or any other agency of the State government charged with the settlement of State taxes," does not apply to the collection of an inheritance tax by a register of wills appraised by appraisers duly appointed.

4. The word "settlement," in its technical sense, cannot be considered as synonymous with the word "appraisement," as used in the Act of June 20, 1919, P. L. 521.

5. The word "settlement," as construed by the courts and understood in prevailing practice, means an adjustment or determination of an amount.

Department of Justice. Opinion to Hon. Clyde L. King, Secretary, Board of Finance and Revenue.

WOODRUFF, Att'y-Gen., March 5, 1925.—Replying to your inquiry concerning whether or not the Board of Finance and Revenue has the authority to grant a refund for certain transfer inheritance taxes alleged to have been

erroneously assessed and paid in re Estate of Horatio B. Koch, deceased, permit me to advise you as follows:

It appears that Horatio B. Koch died Sept. 29, 1920; that the State transfer inheritance tax was paid to the Register of Wills of Lehigh County, Dec. 23, 1920, in which was included tax on certain real estate then supposed to have been owned by the decedent, but which it is now alleged was in fact owned by another.

The discovery of this alleged error was not made until, possibly, May 1, 1924, three years and four months after the date of payment.

More than two years having elapsed since the date of the payment of the tax, and there being no question of an overvaluation by reason of the estate having consisted in whole or in part of a partnership or other interest of uncertain value or having been involved in litigation, no question arises which calls for a consideration of the provisions of section 40 of the Act of June 20, 1919, P. L. 521. The scope of this section has been considered in an opinion rendered to the State Treasurer by Deputy Attorney-General John Robert Jones, under date of July 28, 1924, in the Estate of John B. Steele, deceased [5 D. & C. 540].

The only question is whether or not the Board of Finance and Revenue created by section 1102 of article XI of the Act of June 7, 1923, P. L. 498, 551, known as the "Administrative Code," has authority to consider the claim, and, if valid, direct a refund of the amount of tax from the State Treasury. Paragraphs (a) and (b) of said section state that said board shall have the power, and it shall be its duty:

"(a) To continue to exercise the powers by law vested in and imposed upon the Board created by the Act, approved the eighth day of April, one thousand eight hundred and sixty-nine, entitled 'An Act relating to the settlement of public accounts,' its amendments and supplements, the Board of Public Accounts, the Board of Revenue Commissioners, and the Sinking Fund Commission.

#### "Resettlements.

"(b) To revise any settlement made with any person or body politic by the Auditor General or with any other agency of the State government charged with the settlement of State taxes, when it may appear from the accounts or from other information that the same has been erroneously or illegally made, and to resettle the same according to law and to credit or charge, as the case may be, the account of such person or body politic."

The Act of April 8, 1869, P. L. 19, creating the said Board of Public Accounts, reads as follows: "An act relating to the settlement of public accounts.

"Section 1. Be it enacted, etc., that the Auditor General, State Treasurer and Attorney-General be authorized to revise any settlement made with any person or body politic by the Auditor General, when it may appear from the accounts in his office, or from other information in his possession, that the same has been erroneously or illegally made, and to resettle the same according to law, and to credit or charge, as the case may be, the amount resulting from such resettlement upon the current accounts of such person or body politic."

To this act the supplementary Act of June 9, 1911, P. L. 738, was subsequently passed, which, however, has no bearing upon the case in point.

The Act of June 12, 1878, P. L. 206, authorizing the State Treasurer to refund collateral inheritance taxes erroneously paid, upon application made within two years, was in all respects, so far as the question here involved is

concerned, substantially the same as said section 40 of the Act of June 20, 1919, and in an opinion by Henry C. McCormick, Attorney-General, under date of Jan. 14, 1899, to the then State Treasurer, he advised in part as follows:

". . . I advise you that the application for repayment of the collateral inheritance tax, paid erroneously into the State Treasury, cannot under any act of assembly be repaid to you. Repeating what I said to Hon. S. M. Jackson, State Treasurer, in letter from this department, dated June 6, 1895, and now before me: 'I regret to say that the only legal authority vested in the State Treasurer to repay tax erroneously paid to the Commonwealth is by the Act of June 12, 1878, and that, by a proviso contained in said act, all applications for repayment of tax erroneously paid into the treasury must be made within two years from the date of payment. I reach this conclusion because of the imperative words of the statute.' It has been made perfectly clear to me that this estate, as it was finally settled, paid several thousand dollars more tax than that to which the Commonwealth was entitled, but as the law now stands the only remedy is through an act of assembly passed appropriating the money."

See, also, the following opinions of Attorneys-General to the same effect: In re Mathias's Estate, 1895-96, page 78; McClune's Estate, 37 Pa. C. C. Reps. 529.

It is clear, therefore, that, prior to the passage of the Administrative Code in 1923, opinion was well settled to the effect that refund of such taxes erroneously paid could not *"under any act of assembly"* be granted upon application made more than two years after date of payment of the tax, except in those special cases provided for in said section 40 of the Act of June 20, 1919, which, as hereinbefore stated, have no application here.

The said Act of April 8, 1869, P. L. 19, creating the said Board of Public Accounts, authorized it to *"revise any settlement made . . . by the Auditor General."* By paragraph *(b)* of the Act of June 7, 1923, the power of the Board of Finance and Revenue appears to be enlarged so that it may *"revise any settlement made . . . by the Auditor General or any other agency of the State government charged with the settlement of State taxes."*

Webster's International Dictionary defines the word "settlement" as "the act or process of adjusting or determining; composure of doubts or differences; arrangement; adjustment; as, *settlement* of a controversy, *of accounts*, etc." The Act of March 30, 1811, 5 Sm. Laws, 228, is entitled "An act to amend and consolidate the several acts relating to the settlement of public accounts, etc." It consolidates the acts relating to the settlement of public accounts, and authorizes the Auditor General to examine and adjust the same according to law and equity, therein providing a procedure which is spoken of as a "settlement;" it seems to indicate that this term is used in the sense of *adjustment* or *determination* of an amount. In the case of Com. *v.* N. Y., Pa. & Ohio R. R. Co., 188 Pa. 169, 178, Judge Simonton, of the Dauphin County Court, whose decision was affirmed by the Supreme Court, says:

"An 'account' or 'settlement' is a physical, tangible thing, a paper with figures and writing upon it, signed by the Auditor General and State Treasurer, endorsed, copied into a ledger and filed away in its appropriate place. Whether such a settlement has been made against a given corporation, for a tax of a given year, is, therefore, a question of fact to be ascertained by looking in the proper place for the settlement."

The power and authority conferred upon the Board of Finance and Revenue must be strictly construed. Prior to the enactment of the Administrative

Code, the authority of the board extended only to the settlements made by the Auditor General. This authority was, by the Administrative Code, enlarged to cover *any settlement made . . . by any other agency of the State government charged with the settlement of State taxes.* The question then arises whether the register of wills, a county officer, charged by the Act of June 20, 1919, with certain duties in connection with the collection of the transfer inheritance taxes, can be considered as an "agency of the State government charged with the settlement of State taxes."

The following sections, or parts of sections, of the said Act of 1919 are of interest in this connection:

Section 21 provides that: "The registers of wills, upon their filing with the Auditor General the bond hereinafter required, shall be the agents of the Commonwealth for the collection of the said tax. . . ."

Section 10 provides that: "The register of wills . . . shall appoint an appraiser, whenever occasion may require, to appraise the value of the property or estate. . . . Such appraiser shall make a fair, conscionable appraisement of such estates, and assess and fix the cash value of all annuities and life estates, etc."

And section 14 provides: "The register of wills shall enter in a book to be provided for at the expense of the Commonwealth, which shall be a public record, the returns made by all appraisers appointed by him under the provisions of this act, opening an account in favor of the Commonwealth against each decedent's estate."

From the foregoing it does not appear that the register of wills is an "agency of the State government charged with the *settlement* of State taxes," in the sense in which the word "settlement" has been construed by the courts and is understood in prevailing practice: Stratford v. Franklin Paper Mills Co., 257 Pa. 163. It cannot be assumed that by the addition of the words "or any other agency of the State government charged with the settlement of State taxes," in section 1102 (b) of the Act of June 7, 1923, the legislature intended to extend or place a new construction on the historically technical meaning of the word "settlement" as it is used in the aforesaid Act of March 30, 1811, its supplements and amendments, and as it has always been understood in the office of the Auditor General in connection with the method of arriving at the amount of tax imposed upon certain taxables by that official. The word "settlement" in this technical sense cannot be considered as synonymous with the word "appraisement" as used in the Act of June 20, 1919. Under this latter act, the appraiser ordinarily appointed makes the appraisement and the register of wills simply acts as the agent of the Commonwealth in the capacity of a *collector* with certain wide powers conferred by the act: Warden's Estate, 43 Pa. C. C. Reps. 333; Luzerne County v. Morgan, 263 Pa. 458.

Further, the Board of Finance and Revenue would have no authority to grant the request that a refund of the erroneous payment be made. Neither the original Act of 1869 nor the Administrative Code of 1923 gives the board authority to do more than "revise" a settlement made and "to credit or charge" the account of such person or body politic.

I, therefore, advise you that neither the State Treasurer, at this time, nor the Board of Finance and Revenue has jurisdiction in this matter nor authority to refund the tax erroneously paid.

The only remedy, if any, that I could suggest would be for the applicants to obtain the passage of a refunding act through the legislature, including an appropriation therefor.          From C. P. Addams, Harrisburg, Pa.