# Phœnix Carpet Co. v. The State.

*Prosecution of Corporation for Engaging in or Carrying on Business Without a License.*

1. *Constitutional law; legislative power to impose privilege or occupation tax on corporation.*—Section 1 of Article XI, providing that "all taxes levied on property in this State shall be assessed in exact proportion to the value of such property," and section 6 of Article XI, providing that "the property of private corporations, associations and individuals of this State shall forever be taxed at the same rate." relate only to direct taxes on property, and do not apply to taxation on privileges or occupations, and constitute no limitation upon the power of the legislature to impose a tax on avocations or privileges ,or on franchises of corporations.

2. *Same; validity of statute imposing privilege tax on corporations.*—The 15th sub-division of the 35th section of the "Act to amend the revenue laws of the State of Alabama." approved February 18, 1897, (Acts of 1896-97, p. 1489), requiring all corporations, foreign or domestic, doing business in this State, except banks and banking institutions regularly organized, not otherwise specifically required to pay a license tax, to pay an annual privilege tax graduated by the paid up capital stock of the corporation, imposes a privilege or franchise tax. and is not violative of sections 1 and 6 of Article XI of the Constitution.

3. *Taxation; construction of statute; when act takes effect.* The 15th sub-division of section 35 of the "Act to amend the revenue laws of the State of Alabama," approved February 18, 1897, (Acts of 1896-97, p. 1489), requiring corporations to pay an annual privilege tax took effect from the date of the approval of the act, no different time being specified in the

statute; section 634 of the Code of 1886. (Code of 1896, §4126) declaring that all licenses shall be for one year and shall expire on the 31st of December, having relation only to the licenses designated in other sections of said Code, and not referring° to licenses and taxes imposed by subsequent statutes.

4. *Same; right of probate judge to demand payment of county taxes.*—Under the provisions of sub-division 15 of section 35 of the "Act to amend the revenue laws of the State of Alabama," approved February 18, 1897, (Acts of 1896-97, p. 1489), requiring corporations doing business in this State to pay an annual privilege tax, the judge of probate was not authorized to demand payment of a county tax as a condition precedent to issuing a license to such corporations, since there is no authority conferred by the statute to add a county tax to specific taxes imposed by the statute, nor was authority conferred by the statute in question to add a county tax to the specific taxes imposed on the franchises of corporations doing business within this State.

5. *Same; corporation not justified in doing business without license; when mandamus the proper remedy to compel issuance of license.*—Where a judge of probate demanded of the corporation the payment of a county tax in addition to a State privilege tax authorized by statute, as a condition to the issuance of a license to a corporation, which county tax is unauthorized, such corporation is not justified in doing business without a license and without the payment of the tax; but its remedy is by *mandamus* to compel the probate judge to issue the license upon the payment of the State privilege tax as imposed by statute.

APPEAL from the Criminal Court of Jefferson.

Tried before the HON. SAMUEL E. GREENE.

The prosecution in this case was instituted by an affidavit being made out before a justice of the peace alleging that the Phoenix Carpet Company had violated section 3892 of the Code of 1886, by engaging in or carrying on its business as a corporation after the 27th of March, 1897, without having taken out a license as required by sub-division 15 of section 35 of the act of the General Assembly of Alabama, approved February 18, 1897, entitled "An act to amend the revenue laws of the State of Alabama." (Acts of 1896-97, pp. 1489-1514.) A warrant was issued upon this affidavit returnable to the criminal court of Jefferson county and there the trial was had. In the criminal court, the defendant demurred to the affidavit and warrant upon

[Phœnix Carpet Co. v. The State.]

the following grounds: 1st. Sub-division 15 of sec-
'tion 35 of the "Act to amend the revenue laws of the
State of Alabama," approved February 18, 1897, was
unconstitutional and void, because it requires the pay-
ment of a privilege tax from all corporations doing
business in the State of Alabama, and does not re-
quire the payment of a like privilege tax from individ-
uals or partnerships doing business of a similar char-
acter in the State. 2d. Said sub-division of section 35
is unconstitutional and void, in that it requires of cer-
tain corporations, not otherwise required to pay li-
censes, a privilege tax for the right of doing business
as a corporation in the State, and does not require all
other business corporations, which are specifically re-
quired to pay a license tax, a like privilege tax for the
right to do business in the State as a corporation. 3d.
Said sub-division 6 of section 35 is unconstitutional
and void because it is discriminatory in its operation
against corporations. 4th. The provisions of said sub-
division of section 35 do not require the taking out of
a license by corporations until after the 1st day of Jan-
uary, 1898, and the doing of business by the defendant
as a corporation in this State in the year 1897 was not
a violation of section 3892 of the Code of 1886. 5th.
Said sub-division of section 35 of said act is unconsti-
tutional and void. 6th. Because said sub-division of
said section 35 of said act is unconstitutional and void,
because its provisions are arbitrary and there is no
uniformity in determining the license required. This
demurrer was overruled, and to this ruling the defen-
dant duly excepted.

The cause was tried upon the plea of not guilty. On
the trial the State introduced evidence showing that
defendant was a corporation organized under the gen-
eral laws of Alabama, incorporated in 1896; that on
and after the 27th day of March, 1897, it was doing
business in the city of Birmingham as a corporation,
that it had no license to do business as a corporation
as required by sub-division 15 of section 35 of the act
of the General Assembly of Alabama to amend the rev-
enue laws of the State of Alabama, approved February
18th, 1897. The evidence further showed that the paid
up capital stock of said company was five thousand

dollars. Defendant introduced evidence showing that on February 19th, 1897, it tendered to the probate judge of Jefferson county the sum of ten dollars and requested the issuance of a State license to it according to the provisions of sub-division 15 of section 35 of the act above referred to. But that the probate judge declined to issue said license unless defendant paid the further sum of five dollars county license, claiming that the county was entitled to one-half of the State license required by said sub-division 15. This was all the evidence in the case.

The cause was tried by the court without the intervention of a jury, and upon the hearing of all the evidence the court rendered judgment adjudging the defendant guilty as charged and assessing a fine of thirty dollars. To the rendition of this judgment the defendant duly excepted, and from such judgment prosecutes the present appeal.

WALKER PERCY, TILLMAN & CAMPBELL and JAMES E. WEBB, for appellant.—Sub-division 15 of section 35 of the act to amend the revenue laws of the State, approved February 18, 1897, Acts of 1896-97, p. 1489, is unconstitutional. The Constitution, in section 1 of Article XI provides that "all taxes levied on property in this State shall be assessed in exact proportion to the value of such property," and section 6 of the same article provides that "the property of private corporations, associations and individuals of this State shall forever be taxed at the same rate." The licenses required by sub-division 15 of section 35 of the act to amend the revenue laws is clearly required for the sole purpose of raising a revenue, and is not the exercise of the police power. The constitutional provision just cited is to establish uniformity in the rates of taxation as applied to the property of all persons whether natural or artificial. Their object has been construed to secure as far as possible that equality in bearing the just burdens of government which has become a distinguishing characteristic of the American States and has well been denominated the corner stone of Anglo-Saxon liberty.—*Moog v. Randolph,* 77 Ala. 602. It is very clear and has been so announced that the lan-

guage of the sections of Article XI quoted above was intended to require the legislature to impose the burdens of taxation upon the property of corporations the same or equally with that of individuals.—*State v. Stonewall Ins. Co.,* 89 Ala. 335. "The principles of equality and uniformity are indispensable to taxation, whether general or local; and the statute tending to create disproportion is unconstitutional.—Cooley on Taxation, pp. 124, 127, 129; 1 Desty on Taxation, p. 29; 2 Desty on Taxation, p. 119; *Chicago v. Larned,* 34 Ill. 203; *Cheshire v. Com.,* 118 Mass. 386; *People v. Salem,* 20 Mich. Rep. 474; *Ryerson v. Utley,* 16 Mich. 276; *Merrick v. Amherst College,* 12 Allen 504.

If the legislature can arbitrarily exact from corporations the payment of a tax not based upon the value of their property, not determined by the character of their business or occupation, but simply and solely by virtue of their being corporations, then the whole purpose of paragraph 6 of Article XI of the Constitution can be evaded and set at naught. If such a tax can be imposed and can be arbitrarily imposed without reference to property owned or occupation followed, then there is no reason why the amount fixed by this legislature can not be doubled or quadrupled by the legislature. The burdens of government, instead of being equally distributed on all of the property enjoying the protection of the commonwealth, could be laid entirely upon corporate enterprises.—83 Ill. 602; 96 Ill. 346; Cooley on Taxation, p. 383; 62 Cal. 90, 101, 111; 76 New York, 202; 19 N. E. Rep. 564; *Worth v. Wilmington R. R. Co.,* 89 N. C. 291; *R. R. Co. v. Reid,* 13 Wall. 266.

Our court has clearly intimated that a license can not be required of corporations engaged in a certain occupation, unless the same license is required of individuals engaged in the same occupation.—*Quartlebaum v. State,* 79 Ala. 1. The governing principle is not that the same specific tax shall be paid by each as a form of capitation tax, but that whether levied upon and measured by the amount of gross or net earnings or other standard, as upon real or personal estate, there shall be no discrimination made among the individuals of a class, based upon privileges and immunities, secured to one and not to another.

[Phœnix Carpet Co; v. The State.]

.Two propositions have been settled in Alabama and have become fundamental principles of taxation: 1st. The property of individuals and corporations must be taxed at the same rate and without discrimination 2d. Where licenses are required in a calling, occupation or business, it must be required without discrimination, alike of individuals and corporations engaged in such occupation. Natural and artificial persons in the same class must be treated alike.—Cooley on Taxation, p. 170.

If it be conceded that the sub-division in question is constitutional, it does not take effect so as to require the payment of the license of corporations in the year 1897. This is recognized when we consider the provisions of the Code when they existed at the time of the passage of the act.—Code of 1886, §§629, 631, 3892.

The county was authorized to require the payment by the corporation of a county tax under sub-division 15 of section 35 of the act to amend the revenue laws. There is no general law making such provision and there is no authority given in the act in question authorizing the imposition by the county of a specific tax.

WILLIAM C. FITTS, Attorney-General, and CHARLES. G. BROWN, for the State.—The requirement of uniformity in the Constitution does not preclude the division of things taxable into classes. The imposition of taxes which, while bearing equally upon the different members of each class, bear unequally upon the class in the aggregate is not violative of constitutional provisions as to equality and uniformity of taxation. Such classifications are usually based upon inherent differences in the character of the different subjects. The right and privilege to exist as a corporation and also the privilege enjoyed by a corporation of exercising certain powers derived from the State by its charter, may constitute a class of corporations which are subject to a specific tax. 25 Am. & Eng. Encyc. of Law, pp: 61, 62, and 630-640; *Porter v. Railroad Co.*, 73 Ill. 578.

It is clear that the tax in question is a privilege or franchise tax; and, therefore, such a tax as the legislature imposes without violation of the Constitution.

[Phœnix Carpet Co. v. The State.]

*State v. Stonewall Ins Co.,* 89 Ala. 335; *Bank Tax Case,*
2 Wall. 207; 4 Thompson Com. on the Law of Corpora-
tions, 5557-5561; *Cal. v. Cen. Pac. Railroad Co.,* 127
U. S. 41; *Bridge Co. v. State Board of Assessors,* 25
L. R. A. 137; *Honduras Com. Co. v. State Board,* 54
N. J. L. 278; 2 Beach on Private Corp., p. 124, §801; 1
Desty on Past Taxation, pp. 361, 362, §76; *Common-
wealth v. Lancaster Sav. Bank,* 123 Mass. 495.

The proviso in the statute in question relating to
those corporations which are "not otherwise specific-
ally required to pay a license tax," is not violative of the
statute.—*Quartlebaum v. State,* 79 Ala. 1; *State v.
M. C. R. R. Co.,* 74 Me. 382.

BRICKELL, C. J.—At the 1896-97 session of the
General Assembly, an act was passed and approved
February 18, 1897, entitled "An act to amend the rev-
enue laws of the State of Alabama." The fifteenth sub-
division of the thirty-fifth section requires all corpora-
tions, foreign or domestic, doing business in this State,
except banks and banking institutions regularly organ-
ized, not otherwise specifically required to pay a license
tax, to pay an annual privilege tax, graduated by the
paid-up capital stock of the corporation. The appel-
lant, a corporation organized and existing under the
laws of this State, doing business in the City of Bir-
mingham, having a paid-up capital stock of five thou-
sand dollars, on information filed in the Criminal
Court of Jefferson county, was convicted of a violation
of the sub-division, and from the judgment of convic-
tion this appeal is taken.

The argument of the counsel for appellant, proceeds
on the hypothesis, which we are inclined to adopt, that
three questions are presented by the record for con-
sideration and decision, which they state in the follow-
ing order: 1. Is not the sub-division violative of the
first and sixth sections, taken in connection, of the
eleventh article of the Constitution? 2. If not viola-
tive of the Constitution, did the sub-division take effect
from the day of approval of the act, or is it postponed
in operation until the first day of January next? 3.
By force of the general revenue laws, is a county tax
added to the State tax?

1. The two sections of the Constitution supposed to be violated, read as follows: "1. All taxes levied on property in this State shall be assessed in exact proportion to the value of such property: *provided, however,* the General Assembly may levy a poll tax, not to exceed one dollar and fifty cents on each poll, which shall be applied exclusively in aid of the public school fund in the county so paying the same." "§6. The property of private corporations, associations, and individuals of this State shall förever be taxed at the same rate; *provided,* this section shall not apply to institutions or corporations devoted exclusively to religious, educational, or charitable purposes." These sections by their terms relate only to direct taxes on property—it is only such taxes which are levied and assessed; and as to such taxes, they place corporations on an equality with natural persons; there can be no discrimination between them. But property, in the sense in which it is employed, is far from comprehending all the objects or subjects of taxation. Corresponding provisions are found in the constitutions of many, if not all the States, and there is a general, if not a universal concurrence of judicial decision, that they do not limit legislative power in the imposition of specific taxes. In Burroughs on Taxation, §54, referring to these provisions, it is said: "These provisions, as a general rule, are held to apply to property, and not to include taxation on privileges or occupations." And in Sedgwick on Stat. & Const. Law, (2d ed.), 504-507, it is said: "In construing these provisions, it has been held, in many of the States, that the words 'equal and uniform' apply only to a direct tax on property; and that the clause in regard to uniformity of taxation does not limit the power of the legislature as to the objects of taxation, but is only intended to prevent an arbitrary taxation of property according to kind or quality, without regard to value. Specific taxes have, therefore, been sustained as a valid exercise of the legislative power." And in 1 Desty on Taxation, 336, it is said: "The provisions of the Constitution as to equality and uniformity apply to property alone, and not to taxation on privileges or occupations. The legislature must decide when and for what purpose a tax shall be levied, and must select

the subjects of taxation." The authorities, in support
of this general doctrine, are too numerous for citation.
Many of them are collected and referred to in *Denver
City R'y Co. v. Denver,* 52 Am. St. Rep. 243; *City of
Newton v. Atchison,* 47 Am. Rep. 486.

The tax imposed by the sub-division, has the proper-
ties and quality of a franchise tax—it is measured or
graduated by the amount of the paid-up capital stock
of the corporation, and this distinguishes it from a tax
on property. Speaking in reference to this inquiry, it
was said by CLOPTON, J., in *State v. Stonewall Ins. Co.,*
89 Ala. 338: "The usual and most certain test is,
whether the tax is upon the capital stock, *eo nomine,*
without regard to its value, or at its assessed valuation
in whatever it may be invested; if the former, it is a
franchise tax; if the latter, a tax upon the property."
Reference was made to *Bank of Commerce v. Commis-
sioners,* 2 Black, (U. S.) 620, in which it was said by
NELSON, J., speaking of a franchise tax: "The tax was
like one annexed to the franchise as a royalty for the
grant." The tax may be imposed on the creation of the
corporation, but if the charter or grant of incorpora-
tion does not expressly exempt it from taxation, a tax
on the franchise may be subsequently imposed at the
will of the legislature.—Burroughs on Taxation, §85;
*Providence Bank v. Billings,* 4 Peters, 514. Taxation
is a legislative power, comprehended in the general
grant to the General Assembly, except as it is spe-
cially restrained or limited by the Constitution, or by
the relation of the State to the general government;
and in its exercise the General Assembly, is not under
the superintendence and control of the judiciary. "It
is enough for the courts," said BREWER, J., in the *City
of Newton v. Atchison,* 47 Am. Rep. 488, "that both
occupations and property are legitimate objects of tax-
ation; that they are essentially dissimilar; that con-
stitutional provisions regulating the taxation of one
do not control that of the other, and that there are no
constitutional inhibitions on the taxation of business,
either by the legislature directly, or by municipal cor-
porations thereto empowered by the legislature."

We may concede, that when a tax is imposed on
avocations, or privileges, or on the franchises of cor-

porations, it must be equal and uniform. The equality
and uniformity consists in the imposition of the like
tax upon all who engage in the avocation, or who may
exercise the privilege taxed; and if it be a franchise tax,.
upon all corporations belonging to the class upon
which it is imposed.—1 Desty on Taxation, §36; Cooley
on Taxation, (2d ed.), 378; *Delaware Railroad Tax*, 18
Wall. 206; *City of New Orleans v. Kaufman*, 29 La.
Ann. 283; *Durach's Appeal*, 62 Penn. St. 491. The
General Assembly in the legitimate exercise of the tax-
ing power, may impose direct taxes on lands only, to
the exclusion of every variety or species of personal
property; or, it may not tax lands, and subject per-
sonal property only to direct taxation. This is within
the general grant of the power of taxation, which of
necessity involves the power of selecting that property
or species of property which in the judgment of the leg-
islature is the better able to bear the burden of taxa-
tion. And, as is said by Judge Cooley, "What is true
of property is true of privileges and occupations also;
the State may tax all, or it may select for taxation cer-
tain classes and leave the other untaxed. Considera-
tions of general policy determine what the selection
shall be in such cases, and there is no restriction on the
power of choice unless one is imposed by the Constitu-
tion."—Cooley on Taxation, 570. Corporations are of
every character and variety; have grown to be almost
as various and diverse in their franchises, as are the
avocations or pursuits of natural persons. The idea
which seems to pervade the argument of counsel for
appellant, that if one of these artificial beings, or one
class of them, is selected as a subject of taxation, the
whole body of private corporations, without regard to
the diversity of their franchises, must be subjected to
the like tax, finds no support in authority, and dero-
gates from the power of the legislature to select the
objects and subjects of taxation. A power it may be
admitted, capable of abuse, as is all human power, but
if abused, the corrective does not rest with the courts.
Nor can it be said, that it would be right or just to sub-
ject all these artificial beings, without regard to the
diversity of their powers and franchises to like taxa-
tion. We will not prolong discussion—the tax imposed

by the sub-division, is imposed for the purposes of revenue; it is of the "ways and means," the legislature has employed to meet the expenses of government, and its other pecuniary necessities, and is not offensive to the Constitution.

2. Unless a different time is specified, statutes take effect and become operative from the day of the approval by the Governor.—Sedg. Stat. & Const. Law, 67; Sutherland on Stat. Constr., §104; *Taylor v. Hand,* 31 Ala. 383; *Br. Bank Mobile v. Murphy,* 8 Ala. 119. This general principle is not denied, nor is it contended that there are any words in the sub-division, or in the act of which it forms part, indicative of a legislative intention to postpone its operation to a future day. The contention is, that such intention must be implied or the sub-division will be inharmonious with the statute, (Code of 1886, §634), which declares that all licenses shall be for one year, and shall expire on the thirty-first December, unless the business commences after the first of July, in which case the price of license shall be one-half of the year's license. The statute referred to has relation only to the licenses designated in other sections of the Code, and it cannot be referred to licenses and taxes exacted by subsequent statutes. There is no want of harmony in the operation of such statutes—each has its own field of operation, and the two can never collide or conflict. The subdivision exacts the tax and license from the corporation doing business in this State, after the day of approval of the act. It is an annual tax the corporation is required to pay, and from the day of its payment, the corporation having obtained the license, is entitled to do business. It is a new license and tax exacted by the legislature, having no relation to or connection with the taxes imposed or licenses exacted by pre-existing legislation, and is governed by the terms of the statute creating it.

3. Counties have no inherent power of taxation; they have only such power as is delegated to them, and must have express authority of law to sanction the taxes they demand.—Cooley on Taxation, 678; Burroughs on Taxation, §138. The Constitution recognizes the power of the General Assembly to confer on them authority to levy direct taxes on property, but

limits the authority to an annual levy of not more than one-half of one per centum of the value of the taxable property therein.—Const., Art. XI, §5. When the General Assembly has imposed specific taxes for State uses, requiring a license not only as evidence of the payment of the tax, but as the condition on which a privilege may be exercised, or a business pursued, authority has been conferred on the court of county commissioners, the body through and by which all the powers of the county are exercised, if they deemed it necessary, to add to the State tax, a county tax, not exceeding fifty per centum of the State tax.—Code of 1886, §633; Code of 1896, §4132; (Pamph. Acts, 1886-87, pp. 13, 316). A general authority to add a county tax to specific taxes the State may impose is not conferred. The power conferred is special—it is limited to the specific taxes enumerated in connection with it, and is to be exercised only when the commissioners' court deem it necessary, and keeping within the limitation prescribed, to the extent only they may deem it necessary. Authority is not conferred by the statute to add a county tax to the specific tax imposed on the franchises of corporations doing business within the State, and the judge of probate was in error in demanding the payment of a county tax as a condition upon which he would issue license to the appellant. The error should have been corrected by *mandamus,* compelling the issue of the license—it affords to the appellant no excuse, or justification for continuing to do business without the license and without the payment of the tax.

We find no error in the record, and the judgment of the court below is affirmed.