(Interim Order)
This is a franchise-tax case.
The Century Dictionary (1891), Vol. VI, p. 6201, defines the word "tax" in its first definition as follows:
 "(1) A disagreeable or burdensome duty or charge; an exaction; a requisition; an oppressive demand; strain; burden; task."
The same dictionary, Vol. II, p. 2360, defines "franchise" as:
 "A privilege arising from the grant of a sovereign or government or from prescription, which presupposes a grant; a privilege of a public nature conferred on individuals by grant from government: as, a corporate franchise (the right to be and act as a corporation)."
Yet, this is far more than a franchise-tax case. It is a very important matter with great economic impact.[1] We are forced by a unanimous decision of the United States Supreme Court to come to grips with a propensity to favor domestic corporations over foreign corporations, a propensity that has permeated the decisions of all branches of State government.
 I. Procedural History
Several foreign corporations, including South Central Bell Telephone Company, a number of related Bell companies, and CSX Transportation, Inc. (collectively, the "Taxpayers"), filed separate actions against the State Department of Revenue (the "Revenue Department"), alleging that Alabama's franchise-tax scheme discriminated against foreign corporations in a way that violated the Commerce Clause of the Constitution of the United States. The Taxpayers' actions were filed while another action filed by Reynolds Metals Company raising the same constitutional challenge was on appeal to this Court. The Taxpayers' actions were stayed pending the outcome of the Reynolds Metals appeal. In that case, White v. Reynolds Metals Co., 558 So.2d 373 (Ala. 1989), cert. denied, 496 U.S. 912 (1990), this Court held that Alabama's franchise-tax scheme did not violate the Commerce Clause. The Taxpayers then proceeded with their actions, seeking refunds of franchise taxes they *Page 135 
had paid, as foreign corporations, for the tax years 1982 through 1991. After consolidating the actions for trial, the Circuit Court of Montgomery County dismissed the Taxpayers' claims, holding thatReynolds Metals finally decided the interstate-commerce issue against the Taxpayers and, thus, that their claims were barred under the doctrine of res judicata. The Taxpayers appealed; this Court affirmed, without an opinion. See South Cent. Bell Tel. Co.v. State, 711 So.2d 1005 (Ala. 1998).
The Supreme Court of the United States, after granting the Taxpayers' petition for certiorari review, reversed this Court's decision and remanded the case "for further proceedings not inconsistent with [its] opinion." South Cent. Bell Tel. Co. v.Alabama, 526 U.S. 160, 167, 119 S.Ct. 1180, 1185 (1999) ("SouthCentral Bell"). The Supreme Court held that, to the extent this Court's decision had "rest[ed] on state-law claim or issue preclusion (res judicata or collateral estoppel) that holding [was] inconsistent with [Richards v. Jefferson County,517 U.S. 793 (1996),] and with the Fourteenth Amendment's due process guarantee." The Supreme Court also held that Alabama's franchise-tax scheme is discriminatory on its face and as applied, see526 U.S. at 169-70, 119 S.Ct. at 1185-86 (stating that "[t]he tax . . . facially discriminates against interstate commerce" and that "[t]his discrimination is borne out in practice"), and, therefore, that "Alabama's franchise tax [Ala. Code 1975, §§ 40-14-40, 40-14-41] [is] unconstitutional." However, the Supreme Court did not declare that the provisions of the Constitution of Alabama of 1901 — art. XII, § 229 and § 232 — that mandate the enactment of the domestic-and foreign-corporation franchise-tax statutes are unconstitutional as violating the Commerce Clause. As we consider the franchise-tax scheme, we find it clear that the discrimination against interstate commerce is not the result of the State constitutional provisions found at §§ 229 and 232.
 II. Alabama's Franchise-Tax Scheme[2]
Alabama's franchise-tax scheme is composed of constitutional and statutory provisions. The Constitution of Alabama of 1901 provides for the imposition of franchise taxes on domestic corporations (§ 229) and on foreign corporations (§ 232). Section 229, as amended by Amendment No. 27, requires the imposition of a franchise tax on domestic corporations, providing in pertinent part:
 "The Legislature shall,[3] by general laws, provide for the payment to the state of *Page 136 
Alabama of a franchise tax by corporations organized under the laws of this state which shall be in proportion to the amount of capital stock. . . ."
(Emphasis added.) Pursuant to the mandate of § 229, the Legislature has enacted § 40-14-40, levying a franchise tax on domestic corporations. That section provides in pertinent part:
 "Every corporation organized under the laws of this state . . . shall pay annually to the state an annual franchise tax based on its capital stock as follows:
 "For the tax year beginning Rate on each $1000.00 of capital stock
"January 1, 1984 $10.00
"And all years thereafter $10.00
 "provided, that in no event shall the amount paid by any corporation for annual franchise tax be less than the sum of $50."
(Emphasis added.)
Neither the Constitution of Alabama of 1901 nor § 40-14-40
defines the term "capital stock." Early in our post-1901 jurisprudence, this Court defined the term "capital stock," as used in § 229, as the paid-in, or paid-up, capital stock, but never as par value.[4] Ultimately, for reasons not clear from the record in this present case,[5] the term "capital stock," as it is used in the domestic-corporation franchise-tax statute, came to be interpreted by Alabama *Page 137 
courts as meaning the par value of the corporation's shares of stock.[6] Thus, in practice, the term "capital stock" has consistently been interpreted strictly to refer to shares of equity ownership in the corporation.
Section 232 of the Constitution of Alabama of 1901, as amended by Amendment No. 473, provides for the imposition of a franchise tax on foreign corporations. It states in pertinent part:
 "The legislature shall,[7] by general law, provide for the payment to the state of Alabama of a franchise tax by such corporation, but such franchise tax shall be based on the actual amount of capital
employed in this state."
(Emphasis added.) The foreign-corporation franchise tax differs basically from the domestic-corporation franchise tax in that it is a tax on the foreign corporation's "actual amount of capital
employed in this state," rather than one on the corporation's "capital stock." The Constitution of Alabama of 1901 does not define the term "capital." Pursuant to the mandate of § 232, the Legislature has enacted § 40-14-41, levying a franchise tax on foreign corporations.[8] Section 40-14-41 provides in pertinent part: *Page 138 
 "(a) Amount of levy. — Every corporation organized under the laws of any other state, nation, or territory and doing business in this state . . . shall pay . . . to the state an annual franchise tax of three dollars ($3) on each one thousand dollars ($1,000) of the actual amount of its capital
employed in this state. . . ."
(Emphasis added.)
The term "capital," as it is used in § 232 and in the foreign-corporation franchise-tax statute, has been construed several times by this Court. This Court has construed "capital" to mean "all assets which have an actual or a legal situs in Alabama and which are used or employed by the foreign corporation in Alabama in the exercise of any business whatsoever." AlabamaTextile Prods. Corp. v. State, 263 Ala. 533, 544, 83 So.2d 42, 50
(1955) (noting that the phrase "actual capital employed in this state" does not mean the net worth of the corporation).263 Ala. at 543, 83 So.2d at 50.[9]
In 1961, the Legislature amended the foreign-corporation franchise-tax statute, expressly defining the term "capital" and specifying a method for determining the actual amount of capital employed by a foreign corporation in Alabama.[10] See Act No. 912, 1961 Ala. Acts 1462 (presently codified, as amended, at Ala. Code 1975, § 40-14-41(b)). The 1961 Act clearly intended "capital" to mean the property of the corporation, since it limited the actual amount of capital employed in this State to the "sum of (1) [the foreign corporation's] tangible property located in the State and (2) its intangible property employed in the conduct of its business in the State."[11] *Page 139 
Thus, the term "capital" has been consistently interpreted for purposes of § 232 and the foreign-corporation franchise-tax statute to apply to the assets of the corporation.
 III. Construction of §§ 229 and 232
The term "capital stock" was ambiguous in 1901 (see ArcherDaniels Midland Co. v. Seven Up Bottling Co., 746 So.2d 966 (Ala. 1999), and Abbott Laboratories v. Durrett, 746 So.2d 316 (Ala. 1999)); and it is still ambiguous. Looking at how the term was treated at a point roughly contemporaneous with the drafting of the Constitution of 1901, we first turn to this Court's opinion in Commercial FireInsurance Co. v. Board of Revenue of Montgomery County, 99 Ala. 1,4-5, 14 So. 490, 491-92 (1891). That case involved an ad valorem tax imposed on, among other things, the capital stock of a corporation, except such portions of the capital stock as might be invested in property that was otherwise taxed as property. Commercial Fire Insurance Company contended that $51,000 of its capital stock was invested in the capital stock of the Bank of Montgomery and, therefore, that it should not have to pay the ad valorem tax on this $51,000. Before holding that insurance companies could not invest their capital stock in the capital stock of other corporations, Chief Justice Stone asked:
"What is capital stock of corporations . . .?"
He then quoted Cook on Stock Stockholders, § 3:
 "`Capital stock is the sum fixed by the corporate charter as the amount paid in, or to be paid in by the stockholders, for the prosecution of the business of the corporation, and for the benefit of corporate creditors. The capital stock is to be clearly distinguished from the amount of property possessed by the corporation.'"
Chief Justice Stone, after citing and quoting other sections of Cook on Stock Stockholders, and Neiler v. Kelly, 69 Pa. 403
(1871), and authorities not here relevant, proceeded:
 "The foregoing quotations are made with a view of presenting clearly and fully the nature and object of capital stock in a corporation. As property it has peculiar attributes. Collectively it is the property of the corporation, while the ownership of the shares is in the shareholders."
(Emphasis added.)
In Fox's Appeal, 112 Pa. 337, 354-55, 4 A. 149, 155 (1886), Justice Paxson wrote for the Supreme Court of Pennsylvania:
 "The capital stock is nothing — a myth — a mere name, excepting insofar as it is represented by investments made with the money paid into the treasury of the corporation on account of such capital stock. Hence it is that the courts have long since declared that a tax upon the capital stock of a corporation is a tax upon the assets and property of such corporation."
See also Commonwealth v. New York, P. O.R.R., 188 Pa. 169,41 A. 594 (1898), affirming a trial court's conclusion that "[a] tax on the capital stock of a corporation is a tax on its property and assets, including its franchises." 188 Pa. at 176, 41 A. at 601
(with three Justices dissenting).
In Henry Campbell Black's A Dictionary of the Law, published in 1891, "capital stock" is defined, at page 170, as: "The common stock or fund of a corporation. The sum of money raised by the subscriptions of the stockholders, and divided into shares." Black's then quotes 23 N.J.L. 195 for the proposition that "[c]apital stock, as employed in acts of incorporation, *Page 140 
is never used to indicate the value of the property of the company."
In another case roughly contemporaneous with the Alabama Constitutional Convention of 1901, Western Union Telegraph Co. v.Kansas, 216 U.S. 1 (1910), the United States Supreme Court illustrated a broad construction of "capital stock" as covering the assets of the corporation. In that case, the Supreme Court used the terms "capital" and "capital stock" interchangeably to denote the entire stock of assets of a corporation, construing the term "capital stock," for purposes of a Kansas statute imposing a franchise tax on foreign corporations, as "representing the interests, property and operations of the company not only in Kansas but throughout the United States and foreign countries."Id. at 34-35.
This Court recognizes that before the adoption of the Constitution of Alabama of 1901, this Court and legal writers of the time used the term "capital stock" in the strict and narrow sense as dealing only with amounts paid in to the corporate treasury. See, e.g., 11 William Meade Fletcher et al., FletcherCyclopedia of the Law of Private Corporations § 5079 (perm. ed. rev. vol. 1991), defining "capital stock" as "the amount fixed, usually by the corporate charter, to be subscribed and paid in or secured to be paid in by the shareholders of a corporation, either in money, or in property, labor or services, at the organization of the corporation." See Phoenix Carpet Co. v. State, 118 Ala. 143,151, 22 So. 627, 628 (1897); Commercial Fire Ins. Co. v.Board of Revenue of Montgomery Co., supra; William L. Clark, Jr.,Handbook on the Law of Private Corporations 253-54 (2d ed. 1907) (explaining the historic distinction between "capital stock" and "capital"). Yet, this definition cannot be deemed exclusive, as is evident from cases such as Fox's Appeal, supra. See, e.g.,Fletcher Cyclopedia of the Law of Private Corporations, recognizing that in tax statutes the term "capital stock" is sometimes used in the sense of "capital." See 14A William Meade Fletcher et al., Fletcher Cyclopedia of the Law of PrivateCorporations § 6961 (perm. ed. rev. vol. 1991). That treatise explains that "[t]he term `capital stock' connotes several meanings" and that "it is sometimes used, particularly in statutes relating to taxation, in the sense of `capital.'" Id. Fletcher'sCyclopedia defines "capital" as "the assets to be used by the corporation for deriving profit in the conduct of its business." 14A id. § 6961.
This Court cannot be catalogued as a jurisdiction that recognized the term "capital stock" as referring only to the amounts paid in by shareholders while other courts of the time, such as the Pennsylvania Supreme Court in Fox's Appeal, supra, took a broader view. In Phoenix Carpet Co. v. State, supra, this Court construed an 1897 statute that imposed a "privilege tax" against foreign or domestic corporations "graduated by the paid-up capital stock of the corporation." 118 Ala. at 149,22 So. at 627. In rejecting the taxpayer's arguments that the tax violated State constitutional prohibitions[12] by imposing a tax on corporations and not on individuals and by exempting certain corporations, this Court distinguished between franchise taxes and *Page 141 
property taxes. This Court held that the operation of the constitutional provisions relied upon by the taxpayer was limited to property taxes. In so holding, the Court acknowledged the potential for a dual meaning of the phrase "capital stock," depending on its context. This Court then, 118 Ala. at 151,22 So. at 628, quoted part of a test set out in State v. StonewallInsurance Co., 89 Ala. 335, 7 So. 753 (1889), for determining whether a tax is a "franchise tax" or is a "property tax."Stonewall Insurance Co. stated:
 "Owing to the difficulty of distinguishing between the capital and the property in which it is invested, tests for determining whether a tax is on the property or the franchises, may be regarded, generally, uncertain and unsatisfactory; yet, its determination is often necessary, for if a franchise tax, the property in which the capital is invested becomes immaterial. The usual and most certain test is, whether the tax is upon the capital stock, eo nomine, without regard to its value, or at its assessed valuation in whatever it may be invested; if the former, it is a franchise tax; if the latter, a tax upon the property."
89 Ala. at 338, 7 So. at 754 (emphasis added). Because the 1897 statute computed the amount due with express reference to "paid-up
capital stock of the corporation" (emphasis added) the formula was easily recognizable under Alabama law as relating to a franchise tax and not a property tax.
Justice Oliver Wendell Holmes wrote for the United States Supreme Court in Towne v. Eisner, 245 U.S. 418, 425 (1918):
 "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used."
Because some Justices dissented in Archer Daniels Midland and in Abbott Laboratories, for the Court to render a unanimous opinion it must examine the term "capital stock" as it is defined today to see if it is ambiguous. Black's Law Dictionary (7th ed. 1999), defines "capital stock" as: "1. The total number of shares of stock that a corporation may issue under its charter or articles of incorporation, including both common stock and preferred stock. . . . 2. The total par value or stated value ofthis stock." (Emphasis added.) Black's Law Dictionary (6th ed. 1991), defined "capital stock" as: "The shares of stock representing ownership of a business. . . . Corporate assets or property contributed by shareholders. . . . Liability of the corporation to its shareholders, after creditors' claims have been liquidated. Valuation of the corporation as a businessenterprise." (Emphasis added.)
Black's Law Dictionary (5th ed. 1979) defined "capital stock" substantially as it is defined in the 6th edition and includes the definition: "Valuation of the corporation as a business enterprise."
Black's Law Dictionary (4th ed. 1951 and rev. 4th ed. 1968), defined "capital stock" as follows:
"Capital Stock
"The term has various meanings.
 "It may mean: . . . valuation of the corporation as a business enterprise, Commonwealth v. Columbia Gas Electric Corporation, 336 Pa. 209, 8 A.2d 404, 410."
The Court of Appeals of Kentucky, at a time when that court was Kentucky's highest state court, held that, for purposes of a Kentucky statute imposing a franchise tax on foreign corporations based on the "capital stock" of the corporation, the term *Page 142 
"capital stock" meant "the property of the corporation." Luckettv. Tennessee Gas Transmission Co., 331 S.W.2d 879, 880 (Ky. 1960). The Kentucky court explained:
 "At the outset we wish to point out that the expression, `capital stock' when used in franchise tax statutes has a particular meaning. Usually, and we suppose strictly speaking, the capital stock of a corporation is the money contributed by the corporators to the capital and represented by shares issued to subscribers. It is evidence of rights in property. The terms `capital' and `capital stock' are practically the equivalent of each other, but when considered as the basis for the imposition of a franchise tax, `capital stock' means, not the stock share, but the property of the corporation."
Id. at 880 (emphasis added) (citations omitted). The Kentucky court further explained that the corporate property "includ[es] the intangible value gained by the use of [all property of the corporation] as a going concern" and "necessarily includes tangible property." Id. at 880-81.
Because the term "capital stock" was ambiguous in 1901 and because it is now ambiguous, we can consult the Official Proceedings of the Constitutional Convention of 1901 to determine what the framers meant in using the term "capital stock" in § 229 of the Constitution. However, before doing so, we consider relevant events that preceded the adoption of the 1901 Constitution.
In analyzing the meaning of the phrase "capital stock" as it was being used at the time of the Alabama Constitutional Convention of 1901, we must take into account any constitutional provisions that were supplanted by the provisions of the 1901 Constitution and pay heed to the meaning of words and phrases usually accorded to them at the time they were used. State v.Alabama Power Co., 254 Ala. 327, 338, 48 So.2d 445, 453 (1950). As previously noted, this Court in Phoenix Carpet in 1897 had acknowledged the potential for dual meanings of the term "capital stock," a concept previously recognized in State v. StonewallInsurance Co., supra, in 1889.
In 1898, the United States Supreme Court, in New York v.Roberts, 171 U.S. 658 (1898), upheld a New York statute imposing a franchise tax on both foreign and domestic corporations; that statute was quoted in Roberts as follows:
 "The amount of capital stock which shall be the basis for tax under the provisions of section three, in the case of every corporation, joint stock company and association liable to taxation thereunder, shall be the amount of capital stock employed within this state."
Id. at 663 (emphasis added). The Court referred to the tax as being based on annual dividends in relation to the capital employed in the state. New York, by adopting the phrase "capital stock employed," as its basis for calculating the tax, moved beyond Alabama's reference in its 1897 franchise-tax statute to "paid-up capital of the corporation." By adopting that phrase, New York computed the amount due under its franchise tax in a manner analogous to methods appropriate for computing amounts due under property taxes. That this method makes it easier to segregate in-state and out-of-state assets is but to state the obvious.
Phoenix Carpet and Stonewall Insurance Co. recognized, on the one hand, that a tax on "capital stock" may be a tax assessed in reference strictly to the stock, without regard to its value, and, on the other hand, may be a tax assessed in reference to the value of the stock considered in light of the assets in which the capital has been invested. However, Phoenix Carpet *Page 143 
taught that the latter approach would have serious state constitutional implications if it were applied only to corporations. Roberts upheld a New York franchise tax on both domestic and foreign corporations graded according to annual dividends considered in light of the capital stock employed within the state.
Considering the context of these decisions, one can see a method in the framers' drafting, in 1901, two specific constitutional provisions authorizing, for the first time, franchise taxes on domestic and foreign corporations expressed in broader terms of "capital stock" and "capital employed." Before 1901, the general taxing power of the State had served as the sole basis for a franchise tax, and the 1897 statute provided for a tax "graduated by the paid-up capital stock of the corporation." In order to move to a taxing method that taxed capital stock employed — the method historically deemed by this Court to provide a tax in the nature of a property tax and not a franchise tax, seeStonewall Insurance Co., 89 Ala. at 338, 7 So. at 754 — without running afoul of the constitutional provisions at issue in PhoenixCarpet, provisions that would be carried forward into the Constitution of Alabama of 1901, the framers of the 1901 Constitution had to address franchise taxes specifically. In so doing, the framers abandoned the phrase "graduated by the paid-up capital stock of the corporation," which had been the cornerstone of the 1897 statute.
The intent of the Constitutional Convention in drafting § 229 and § 232 was to provide for the enactment of a franchise tax that would be applied equally to both domestic and foreign corporations insofar as the United States Constitution would permit.Louisville N.R.R. v. State, 201 Ala. 317, 318, 78 So. 93, 94
(1917); White v. Reynolds Metals Co., 558 So.2d 373, 376 (Ala. 1989). This is evidenced by the minutes of the Constitutional Convention. The original version of what became § 232 of the Constitution read in pertinent part as follows:
 "The legislature shall, by general law, provide for the payment to the State of Alabama of a franchise tax by [a foreign] corporation, which shall be the same as that required of domestic corporations and in proportion to the amount of its capital stock. . . ."
Official Proceedings, Vol. 4, p. 4483 (emphasis added). In the proceedings to adopt this section, Mr. Kyle moved to
 "Amend [the above section] of the report by striking out all of the seventh line after the word corporation and all of the eighth except the word `but' and insert the following: `Based on the actual amount of capital employed in this State.'"
Id. at 4484 (emphasis added). As amended, the section then provided:
 "The Legislature shall by general law provide for payment to the State of Alabama for franchise tax upon such corporations based upon the actual amount of capital employed in this State. . . ."
He explained the reasons for his proposed changes:
 "Now the object of that is to cut out corporations, State organizations, that have pledged in different States and that have headquarters or do their business in this State. For instance take the Tennessee Coal and Iron Company. They have a capitalization of thirty million dollars. They have large property in Tennessee as well as in Alabama. Therefore it should not be required of them or any other corporation of like character, to pay its franchise tax upon property they own in other States. Take the Southern Iron and Foundry Company. They have a plant in this State. The main plant is in Tennessee. *Page 144 This amendment would reach all the capital they have in use in Alabama. But they would not have to pay upon the entire capital stock. The Western Union Telegraph Company with eighty million dollars capital would have to pay on the capital of eighty million dollars instead of what she has in this State. So this reaches the matter and makes it the property in possession of the State."
Id. at 4485 (emphasis added). Mr. Kyle's statements unequivocally demonstrate that the purpose of his amendment, and the eventual difference in the language, had nothing to do with what kind of possessions the foreign corporations would be taxed on, but had to do only with where those items that were to be taxed were being used. Alabama would tax only the capital of foreign corporations used within the State, instead of "the entire capital stock," the assets of the corporation. The Convention adopted Mr. Kyle's proposed amendment. The change in the language only prevented Alabama from overreaching into foreign corporations' out-of-state assets. The minutes indicate that the Convention was concerned with protecting foreign corporations from paying too much in Alabama franchise taxes.
The report of the Constitutional Convention to the people stated, in referring to § 232, that "[t]he Legislature is required to provide for the payment of a franchise tax upon corporations, and when levied on foreign corporations, it must be in proportion to the amount of the capital stock employed here." Note that this language is almost identical to the language employed by New York in its franchise-tax statute. See New York v. Roberts, supra. Because § 229 used the term "capital stock" and § 232 used the term "capital," it is evident that the delegates used those terms interchangeably to mean the assets of corporations.
The framers of the Constitution, therefore, required the Legislature to impose a franchise tax based on the value of domestic corporations and based on the value of the capital of foreign corporations used in Alabama. Because a franchise tax is a tax on the privilege of being and acting as a corporation in Alabama, the drafters of the Source Document, the document that controlled the Legislature's subsequent enactment of the franchise-tax statutes, had the power, subject only to any restraints imposed by the United States Constitution, to define the base for the franchise taxes. This is so notwithstanding the fact that at the time of the adoption of the Constitution of 1901 other bases may have been used to calculate a franchise tax.
The provisions now appearing as §§ 40-14-40 and 40-14-41 were part of a single act of the Alabama Legislature enacted in 1935. Ala. Acts 1935, Act No. 194, pp. 256, 387-88. The Legislature enacted Act No. 194 in order to fulfill its constitutional duty to impose a franchise tax on both domestic and foreign corporations in a manner "necessary to give effect to [§ 229 and § 232 of the] Constitution." § 282, Ala. Const. The wording of § 40-14-40
directly follows the wording of § 229 of the Constitution, and the wording of § 40-14-41 directly follows the wording of § 232 of the Constitution. Therefore, the intent of the Constitutional Convention applies to these sections of the Code. Ala. Const. § 282. The terms "capital stock" and "capital" mean assets or valuation of the corporation as a business enterprise. However, § 40-14-40 and § 40-14-41 have been erroneously interpreted to impose the tax on different bases — one for foreign corporations and one for domestic corporations. This difference in the applicable basis of the tax created a discrepancy in the tax burdens on domestic and foreign corporations, even though the rate of the tax on domestic corporations *Page 145 
was 3 1/3 times greater than the rate on foreign corporations. This misinterpretation is why the United States Supreme Court held that the Alabama franchise-tax scheme violated the Commerce Clause by discriminating against interstate commerce. South Central Bell,526 U.S. 160.
Ten years ago, after the Court of Civil Appeals declared the Alabama franchise-tax scheme unconstitutional as violating the Equal Protection Clause of the United States Constitution (Whitev. Reynolds Metals Co., 558 So.2d 367 (Ala.Civ.App. 1989)), and the State indicated that it was not going to petition this Court for a writ of certiorari, some Justices on this Court, who thought that the opinion of the Court of Civil Appeals was not legally sound, encouraged this Court to issue its writ of certiorari without being requested to do so. After the Governor requested an advisory opinion on Alabama's franchise tax, this Court, in an unprecedented act, unanimously agreed to issue its writ of certiorari to the Court of Civil Appeals. Thereafter, this Court reversed the judgment of the Court of Civil Appeals and unanimously upheld the franchise-tax scheme against challenges based on the Equal Protection Clause and the Commerce Clause of the United States Constitution. In White v. Reynolds Metals Co.,558 So.2d 373 (Ala. 1989), this Court did not need to determine what the framers of the 1901 Constitution meant in using "capital stock" in § 229 and "capital" in § 232, because, on the record then before the Court, this Court held that the tax as assessed and collected in 1989 did not violate either the Equal Protection Clause or the Commerce Clause. The United States Supreme Court denied certiorari review. 496 U.S. 912 (1990).
House Bill 16, drawn to deal with the consequences of the opinion of the Court of Civil Appeals in White, was the subject of an advisory opinion in Opinion of the Justices No. 330,558 So.2d 390 (Ala. 1989). This Court rejected that aspect of the proposed statute calling for a tax assessment against a domestic corporation based on its "actual capital employed in this state,"558 So.2d at 391, for inconsistency with § 229, calling for an assessment based on capital stock alone. We stated that the framers' failure to use in § 229 language parallel to that used in § 232 was convincing evidence that the framers did not intend to allow such apportionment with regard to domestic corporations. Advisory opinions are not binding on this Court. Opinion of theJustices No. 289, 410 So.2d 388 (Ala. 1982); see AlabamaEducation Ass'n v. James, 373 So.2d 1076 (Ala. 1979). The recitations in the "declarations of legislative intent" in H.B. 16 otherwise accurately portray the same analysis of the intent of the framers of the 1901 Constitution that we describe today. See558 So.2d at 391.
Therefore, for the past 10 years, as a result of this Court's unprecedented action, domestic corporations have not been taxed on the value of their assets. The United States Supreme Court has held that it is not constitutional to have this disparate method of assessing the franchise tax.
Sections 229 and 232 of the Constitution of Alabama of 1901, and the franchise tax statutes, passed by the Legislature pursuant to those constitutional provisions, have been construed and applied to provide different tax bases on which the domestic-and foreign-corporation franchise taxes are calculated — the former only on certain forms of equity claims, and the latter on the Alabama share of the assets of the corporation. It is this difference in the tax bases that causes the franchise tax to discriminate against foreign corporations and, *Page 146 
thereby, against interstate commerce. However, the term "capital stock" as used in § 229, when construed broadly, does not require a tax base for domestic corporations that is different from the tax base for foreign corporations. That is, if the term "capital stock" in § 229 is construed broadly to allow a domestic franchise tax based on the assets ("capital") of the corporation, as § 232 provides with respect to foreign corporations,[13] then there is no facial conflict between §§ 229 and 232 of the Alabama Constitution of 1901 and the Commerce Clause of the Constitution of the United States. Such a construction would also accomplish the intent of the drafters of § 232 to prevent any discrimination against foreign corporations. See Louisville N.R.R. v. State, 201 Ala. 317,318, 78 So. 93 (1917) ("[T]he framers of our organic law did not intend to discriminate against foreign corporations as to a franchise tax and adopted the . . . amendment to section 232 for the sole purpose of avoiding a discrimination by fixing the basis for the franchise tax upon the amount of property actually employed in this state.").
In summary, we are persuaded that the term "capital stock," as used in § 229, authorizes a franchise tax on the assets, or property, of the corporation, and that it is not limited to par value of capital stock or the shares of paid-in capital stock.[14] Therefore, the unconstitutional discrimination that the Supreme Court of the United States has declared in regard to Alabama's franchise-tax scheme stems not from the Alabama Constitution of 1901, but instead from the domestic-corporation franchise-tax statute as interpreted by this Court and as applied by the Executive Department. Whereas § 40-14-41 imposes on a foreign corporation a franchise tax that is in proportion to the actual value of the assets of the foreign corporation used in Alabama, § 40-14-40 imposes on a domestic corporation a franchise tax that is not in proportion to the value of the total assets of the domestic corporation. Any future legislation must be consistent with §§ 229 and 232 of the Constitution of 1901, must use substantially equivalent tax bases for domestic and foreign corporations, and must set a tax rate for foreign corporations that is not higher than that for domestic corporations.
 IV. Conclusion
This interim order is for the guidance of the Legislature in its discharge of its duties necessary for prospective taxation in light of South Central Bell. By this interim order, we do not foreclose the availability of a request for an advisory opinion before any contemplated legislative action.
This Court retains jurisdiction over all issues, including remedial issues involving *Page 147 
the propriety or necessity of retrospective legislation.
INTERIM ORDER ISSUED.
Hooper, C.J., and Maddox, Houston, Cook, See, Lyons, Brown, Johnstone, and England, JJ., concur.
[1] We take judicial notice of the fact that a special session of the Legislature convened on November 15, 1999, at 4:30 p.m., to consider this matter.
[2] The history of Alabama's domestic-and foreign-corporation franchise-tax scheme is also discussed in White v. Reynolds MetalsCo., 558 So.2d 373, 375-80 (Ala. 1989).
[3] The Constitution of Alabama of 1901 is a Constitution of "shalls" and "shall nots." This Court has found in this Constitution only six sections where the discretionary word "may" is used in relation to the legislative power. See §§ 6, 8, 23, 39, 148 (repealed), and 219 (repealed), Constitution of 1901. Few sections in the Constitution of 1901 purport to empower the Legislature to take discretionary action, e.g., "[t]he legislature shall have power to" (see §§ 149 and 271) or "shall have the power to" (see § 238). Some sections provide: "It shall be the duty of the legislature to pass such laws as may be necessary and proper to decide differences by arbitrators to be appointed by the parties who may choose that mode of adjustment" (§ 84); "to make provision by law for revising, digesting, and promulgating the public statutes of this state, of a general nature, both civil and criminal" (§ 85); and "to require the several counties . . . to make adequate provision for the maintenance of the poor" (§ 88). Most other sections regarding legislative authority provide that the Legislature shall or shall not do what is the substance of the section.
What the delegates meant by the word "shall" is graphically illustrated as it related to § 104 of the Constitution, which provides in pertinent part: "The legislature shall not pass a special, private, or local law in any of the following cases. . . ." Here are set out 31 different "cases," including such things as "[f]ixing the punishment of crime," § 104(14), and "[r]emitting fines, penalties, or forfeitures," § 104(28). Following this list of the 31 "cases," the following appears as part of the first sentence in the last paragraph of § 104: "The legislature shall pass general laws for the cases enumerated in this section. . . ." The meaning of the words "[t]he legislature shall pass general laws" was discussed in the Official Proceedings of the Constitutional Convention of 1901 ["Official Proceedings"] by Emmett O'Neal (a delegate from Lauderdale County and chairman of the Committee on Local Legislation and later Governor of Alabama, 1911-1915) and by delegate W. T. Sanders:
 "MR. SANDERS: I desire to ask the gentleman a question. If the Legislature should refuse to pass a general law for the subjects enumerated in this Section, would not the members thereof thereby violate their oath to support the Constitution?
"MR. O'NEAL: Yes sir.
 "MR. SANDERS: It is not optional with them, but is it not a command for them to pass a general law?
 "MR. O'NEAL: In answer to the gentleman from Limestone, by reading the whole section it will be seen that it is made the absolute duty of the General Assembly to pass general laws on every subject as to which they are prohibited from passing local laws. You take up this whole list and while the Legislature is forbidden to pass local laws on these subjects, they are required if this section is adopted to pass a general law covering the subjects. They would violate their oaths if they did not do so."
Official Proceedings, Vol. 2, pp. 1799-1800.
Section 282 of the Constitution also provides: "It is made the duty of the legislature to enact all laws necessary to give effect to the provisions of this Constitution." Therefore, the Legislature has had, and continues to have, the duty to impose a franchise tax on domestic corporations "which shall be in proportion to the amount of capital stock." (See § 229.)
[4] See, e.g., Louisville N.R.R. v. State, 201 Ala. 317, 318,78 So. 93 (1918); Atlantic Coast Line Ry. v. State, 204 Ala. 80,85 So. 424 (1920); State v. Bradley, 207 Ala. 677, 93 So. 595
(1922); Ellis v. W.A. Handley Mfg. Co., 214 Ala. 539, 540,108 So. 343 (1926); State v. Guaranty Sav. Bldg. Loan Ass'n, 225 Ala. 481,483, 144 So. 104 (1932); State v. Southern Natural Gas Corp.,233 Ala. 81, 87, 170 So. 178 (1936), aff'd, Southern Natural GasCorp. v. Alabama, 301 U.S. 148 (1937).
[5] According to an article in The Birmingham News, November 16, 1999, the decision to adopt par value was initially made by the Alabama Department of Revenue in 1923.
[6] See South Central Bell, 526 U.S. at 169, 119 S.Ct. at 1185
(stating that "Alabama law defines a domestic corporation's tax base as including only one item — the par value of capital stock — which the corporation may set at whatever level it chooses");Reynolds Metals Co., 558 So.2d at 380 (stating that § 40-14-40
imposes on domestic corporations "a capital-account tax," that is, a tax that is based on "`the corporation's statement of capital, either authorized shares or outstanding (or issued) shares, generally valued at par in the case of par-value shares,'" id.
at 379); State Dep't of Revenue v. Forrester, 419 So.2d 231, 232-33
(Ala.Civ.App. 1982); see also Ala. Code 1975, § 40-14-23
(providing the method of treating "shares of stock without par value" for purposes of the franchise tax on the "capital stock" of domestic corporations) and § 10-2A-38 (repealed by Act No. 94-245, § 3, 1994 Ala. Acts 457, effective January 1, 1995) (providing the method of determining the amount of stated capital in a domestic corporation having shares of stock without par value). See also the parties' joint "Stipulated Facts" at paragraphs 9, 17, 28, 29, and 56, stating that the tax base for domestic corporations is the par value of the capital stock. (R. at 2004-21.)
[7] See footnote 3.
[8] After the adoption of the Constitution of 1901 and up until 1911, the Legislature had imposed a franchise tax only on foreign corporations. See Ala. Code 1907, §§ 2391-2400. However, the statute that imposed that tax was held by the United States Supreme Court to violate the Equal Protection Clause of theFourteenth Amendment to the United States Constitution. SeeSouthern Ry. v. Greene, 216 U.S. 400 (1910). The Legislature responded to that decision by imposing a franchise tax on both domestic and foreign corporations. Act No. 216, 1911 Ala. Acts 170. A new franchise tax was enacted during the 1915 legislative session. Act No. 464, 1915 Ala. Acts 397. The Legislature in 1927 passed another franchise tax. Act No. 163, 1927 Ala. Acts 176. None of these acts attempted to define "capital stock" or "capital," although the 1911 Act and the 1915 Act did levy a tax on a domestic corporation's "paid-up capital stock."
In 1935, the Legislature enacted what is now § 40-14-40 and § 40-14-41. Act No. 194, 1935 Ala. Acts 256, 387-88. The 1935 Act provided in pertinent part:
 "Section 317. AMOUNT OF LEVY — DOMESTIC CORPORATIONS. Every corporation organized under the laws of this State, except strictly benevolent, educational or religious corporations, shall pay annually to the State an annual franchise tax of two dollars on each one thousand dollars of its capital stock.
 "Section 318. AMOUNT OF LEVY [ — ] FOREIGN CORPORATIONS. Every corporation organized under the laws of any other state, nation or territory and doing business in this State, except strictly benevolent, educational or religious corporations, shall pay annually to the State an annual franchise tax of two dollars on each one thousand of the actual amount of capital employed in this state."
(Emphasis added.) In a series of acts, the Legislature amended the rate of taxation to maintain equality of rate between domestic and foreign corporations. In 1955, the rate for the franchise tax on both domestic and foreign corporations was increased from $2 to $2.50 on each $1,000. Act No. 74, 1955 Ala. Acts 191-92. In 1971, the Legislature again increased the tax rate on both domestic and foreign corporations, raising it from $2.50 to $3 on each $1,000 of capital stock and of capital, respectively. Act No. 103, 1971 Ala. Acts 184-86.
[9] Accord State v. Travelers Ins. Co., 256 Ala. 61, 67-68,53 So.2d 745, 749-50 (1951) (holding that the actual amount of capital employed in the State by a foreign corporation was to be based on the property of the corporation that was within the State and that was used in business transacted within the State); Statev. P.R. Mallory (Huntsville), Inc., 273 Ala. 326, 328,138 So.2d 693, 695 (1961) ("[T]he reasonable and fair market value of the assets of the corporation is the base upon which the franchise tax is to be measured.").
[10] In State Dep't of Revenue v. Sonat, Inc., 690 So.2d 412,416 (Ala.Civ.App. 1997), the Court of Civil Appeals, quoting favorably from the trial court's judgment, discussed the legislative history of the franchise tax on foreign corporations and the purpose for amending the statute to define "capital":
 "`. . . The foreign corporation franchise tax, both as initially enacted in 1915 and as reenacted in the 1935 Act, imposed a franchise tax on foreign corporations based on the "actual amount of capital employed in this state." However, the statute neither defined capital nor provided how the capital employed in Alabama was to be determined. This cryptic statutory provision resulted in many court cases attempting to interpret and apply the tax base to many varied situations. In an effort to eliminate this confusion and litigation, the foreign corporation franchise tax law was amended by the 1961 Act . . . to define the term "capital" and to provide for the allocation of the appropriate amount of capital to Alabama. . . .'"
[11] Section 40-14-41, as presently worded, determines the "actual amount of capital employed by the taxpayer in this state" by totaling liabilities, equity, and retained earnings to arrive at the total value represented on the corporation's balance sheet. This value is then apportioned in accordance with the percentage of corporate assets situated in Alabama.
[12] See Ala. Const. of 1875, art. XI, §§ 1, 6. Section 1 stated in pertinent part: "All taxes levied on property in this state shall be assessed in exact proportion to the value of such property." Section 6 stated in pertinent part: "The property of private corporations, associations, and individuals of this state, shall forever be taxed at the same rate." Section 1 became what is now § 211 of the Constitution of Alabama of 1901, and § 6 became what is now § 217.
[13] See 11 William Meade Fletcher et al., Fletcher Cyclopediaof the Law of Private Corporations § 5079 (perm. ed. rev. vol. 1991) (defining the terms "capital" and "capital stock") ("The term `capital stock' connotes several meanings. The term is sometimes used, particularly in statutes relating to taxation, in the sense of `capital.'").
[14] Consequently, we overrule Louisville N.R.R. v. State,201 Ala. 317, 78 So. 93 (1918); Atlantic Coast Line Ry. v. State,204 Ala. 80, 85 So. 424 (1920); State v. Bradley, 207 Ala. 677,93 So. 595 (1922); Ellis v. W.A. Handley Mfg. Co., 214 Ala. 539,108 So. 343 (1926); State v. Guaranty Savings Building Loan Association,225 Ala. 481, 144 So. 104 (1932), and their progeny, to the extent that those cases limit the definition of "capital stock," as that term is used in § 229 of the Constitution of Alabama of 1901, to mean the amount of stock issued by a domestic corporation, or the paid-in (paid-up) capital stock, and do not interpret that term to mean the assets of the corporation.